## Case No. 10,710.

### PARET et al. v. BRYSON et al.

[2 West. Jur. 351.]

District Court, N. D. Georgia. Oct. 23, 1868.

PARTNERSHIP—RELEASE OF ONE PARTNER FROM A FIRM DEBT—CONSTRUCTION.

1. Although by the common law the release of one partner, or of one of two or more joint or joint and several debtors, operates as a release to all of them, yet this rule does not apply where the release extends to the individual liability only of the party released to the creditors, and does not affect his liability to his co-partners for contribution or otherwise.

2. The court cannot construe such an instrument with reference to a foreign statute, unless the intention of the parties to be governed by such statute is evident from the instrument itself, without the aid of extrinsic evidence.

Hoge & Sprayberry, for plaintiffs, citing New York statute of April 18, 1838; 1 Hill, 135; 5 Hill, 461; Van Reimsdyk [Case No. 16,871]; 19 Wend. 390; 21 Wend. 424; 8 Term R. 112; 2 Dana, 107; 15 Ga. 570; 2 Brod. & B. 38.

Calhoun & Son and Collier & Hoyt, for defendants, citing in argument 8 Bac. Abr. 246, 276; Code Ga. §§ 2810, 2811; Story, Partn. 115, 116; Story, Const. 996, 997; 9 Bing. 341; Colly. Partn. 606; 1 Rawle, 391; 20 Ga. 415; 3 Salk. 298; 1 Bos. & P. 630; 4 Adol. & E. 676; Smith, Mer. Law, 88, 89; 3 Johns. 68; 18 Johns. 459; 13 Mass. 148; Joy v. Wurtz [Case No. 7,555]; 12 Ga. 552; [Smith v. Richards] 13 Pet. [38 U. S.] 42; [Boyce v. Edwards] 4 Pet. [29 U. S.] 111; 31 Ga. 210; Story, Confl. Laws, §§ 241, 280, 388, 414; 5 Hill, 461; 1 Hill, 185.

ERSKINE, District Judge. Henry Paret and Brother, citizens of New York, in the state of New York, brought assumpsit against Thomas M. Bryson, Thomas M. Beaumont, and John R. Wallace, partners, using, as is alleged in the declaration, the firm name and style of Bryson & Beaumont, on five promissory notes, amounting in the aggregate to $3,609.20. The notes bear date first September, 1860, were made in New York, and payable successively at four, five, six, seven, and eight months, to the order of, the plaintiffs at the Georgia Railroad Banking Agency, at Atlanta, Georgia, with current rate of exchange. Non est was returned as to Beaumont. Each of the other defendants pleaded nil debet. Plaintiffs, instead of demurring, took issue thereon. Bryson also specially pleaded a release to himself; and Wallace specially pleaded the release of his co-partner in discharge of his own liability. To these special pleas, plaintiff demurred. Joinder in demurrer. The writing obligatory, which was set out totidem verbis in the body of each of these special pleas is as follows: "Whereas, the firm of Bryson & Beaumont are indebted to us, Henry Paret & Brother, in about the sum of $3,756.92, without interest, which indebtedness occurred while the said Bryson & Beaumont were carrying on business in Atlanta, Georgia, under the said firm name, etc.; now, in consideration of $939.33, to us in hand paid by Thomas M. Bryson, we hereby remise and release the said Thomas M. Bryson from all and every individual liability to us, incurred by reason of such connection with such co-partnership firm. Witness our hands and seals this September 22, 1865. Henry Paret & Bro. [Seal] Witness: John A. Doane."

For the plaintiff it was insisted that the writing does not possess the attributes of the common-law deed of release. Also, that the plaintiffs intended to relinquish no right except as to Bryson and his individual property; and that the instrument, though executed and delivered in New York, is not, by the laws of that state, a discharge of Beaumont or Wallace; and counsel rely on a statute of New York entitled, "An act for the relief of partners and joint debtors," passed in 1838. This law provides that after the dissolution of any co-partnership firm, any member of the late firm may make a separate compromise with any of the creditors, and that this shall operate as a discharge of him, and of him only. And he shall take from the creditor a note or memorandum in writing, exonerating him from all and every individual liability incurred by reason of such connection with such firm; but this shall not discharge the other co-partners, nor impair the right of the creditor to proceed against such members of such firm as have not been discharged. And the compromise or composition "shall in nowise affect the right of the other co-partners to call on the individual making such compromise for his ratable portion of such co-partnership debt, the same as if this law had not been passed." Such is a very brief synopsis of so much of the statute as it is essential to direct attention to in passing upon this case. Vide Laws N. Y. 1838, p. 243.

Counsel for plaintiffs having argued that the instrument was based upon the statute of 1838, it was then contended for defendants that, if such were the fact, it could have no extra-territorial force; that the notes being payable here, it was a Georgia contract;

and also, that the remedy to enforce the payment of the notes must be according to the lex fori. It was further insisted on the part of defendants generally, but more especially on behalf of Wallace, that the writing transcribed into the pleas is a technical deed of release; and Wallace invokes the general rule of the common law—which is also the law of Georgia, (Code, § 2800)—that the release of one joint promissor or co-obligor is, by operation of law, a discharge of all the other co-debtors. To this it was replied by counsel on behalf of plaintiffs that, if the contract executed in New York was not governed by the statutory enactment of that state, then the court would give effect to the actual intent of the parties; citing and relying on Solly v. Forbes, 2 Brod. & B. 38.

Since hearing the very able arguments in this case, a doubt has suggested itself to my mind whether the writing pleaded as a release by Bryson and Wallace, respectively, can, from its own language, be judicially considered as founded upon the New York statute. Such intention may have been in the mind of the plaintiffs, and also in that of the defendant, Bryson. But is this intention made manifest? Can it be gathered from the instrument itself?—for it cannot be collected by the aid of extrinsic evidence. A part of the second section, as was remarked by counsel for plaintiffs, is incorporated into the instrument. It says: "We remise and release the said Thomas M. Bryson from all and every individual liability to us, incurred by reason of such connection with such co-partnership firm;" but there is no reference to the statute itself—nothing on the face of the instrument indicating that the parties executed it under the authority of the statute—nothing to guide, to warn, or to encourage Wallace in his defense. On reference to the statute it will be seen that it provides that the debtor shall take from the creditor "a note or memorandum in writing, * * * which note or memorandum may be given in evidence by such debtor under the general issue, in bar," etc. From this it would seem that the legislature in enacting this law did not contemplate the giving of a writing of the legal dignity of a release. See observations of Bronson, J., in Bank of Poughkeepsie v. Ibbotson, 5 Hill, 461.

I am clearly of the opinion that even if the plaintiffs and the defendant, Bryson, at the time of the making of the deed, had the statute in view, and intended to place it within that governing power, such intention does not appear on the face of the deed. Therefore, as was contended for the defendants, it must, I think, be construed under the guide of the common law. And it may here be remarked, that if the instrument were interpreted and controlled by the statute, and the argument of the learned counsel sound that it has no force beyond the territory of the state of New York, the consequence would be that neither Bryson, though released there, nor Wallace, could successfully plead the release in discharge of the debt, when sued here. In the case of Seymour v. Butler, 8 Cole (Iowa) 304, as found in 20 U. S. Dig. 831, it was ruled that "a release of one of two partners and joint makers of a promissory note, made in New York and payable at Galena, which provides expressly for the release of such partner only, will not be held to release his co-partner." The parties to the release acted under the authority of the New York statute. In bringing this instrument before the court for judgment, it was optional with each of the defendants to plead it according to the legal effect which he deemed proper to place upon it; or, without doing so, to merely recite it in hæc verba, and refer its operation to the court. Each chose the former mode. Although, by the common law, it is well settled —at least, as a general rule—that the release of one partner, or one or two or more joint, or joint and several debtors, operates as a release of all of them; yet this, like other rules, has its exceptions, and courts of justice will be ever astute to fall in with, and give effect to, these exceptions, whenever the parties have manifested such intention in the contract, and it does not violate any of the fundamental rules of the policy of the law. Solly v. Forbes, 2 Brod. & B. 38; Couch v. Mills, 21 Wend. 424; North v. Wakefield, 13 Q. B. 536.

The first two of these cases, and some others which I shall notice, were cited and discussed in argument. Solly v. Forbes: In this case, the plaintiffs entered into a writing obligatory with Ellerman, the partner of the defendant, Forbes, and in consideration of £600 in hand paid by Ellerman, and also of twenty-four promissory notes of £100 each, the plaintiffs remised and released Ellerman from all actions, suits, &c.; provided, nevertheless, it should not release any claims which the plaintiffs had or might have against Forbes, separately, or as a partner of Ellerman; and also that it should be lawful for plaintiffs to prosecute any suits against Ellerman, jointly with Forbes, or against Ellerman, to recover payment of the debt due and owing from Forbes & Ellerman to plaintiffs as aforesaid. The plaintiffs brought an action against Forbes & Ellerman, declaring on the money counts. Pleas; by Forbes, the general issue; issue thereon. By Ellerman, general issue, release, and set-off. Replication to plea of release; demurrer thereon and joinder in demurrer. The court effectuating the intent of the parties, overruled the demurrer. Whether the court meant to adjudge the writing obligatory, a release, or a covenant not to sue, does not clearly appear in the decision. But Parke, B., in Kearsley v. Cole, 16 Mees. & W. 128, said, that in Solly v. Forbes the deed was held to be a covenant not to sue. Bronson v. Fitzhugh, 1

Hill, 185: The only question which can be said to have been decided in that case, was that the legal effect of a sealed contract can not be varied by a contemporaneous written contract of a lower degree. In the case of Bank of Poughkeepsie v. Ibbotson, supra, the plaintiff had executed to Tappan, one of its stockholders, a general and unqualified release. Defendant moved for a nonsuit on the ground that the release of one stockholder operated as a release of all of them. The motion was overruled and the case was carried to the supreme court, where the ruling of the court below was sustained. Bronson, J., speaking for the supreme court, said: "Where several persons are bound by a joint, or joint and several obligation, the unqualified release of one of the obligors will operate as a discharge of all of them." It was further held, that the stockholders were under a several and not joint liability, and, therefore, that the rule did not apply in such cases. The next case presented was Couch v. Mills, 21 Wend. 424. This case was anterior in time to the last two, but subsequent to Solly v. Forbes. After suit instituted against the makers of several promissory notes, the plaintiff, by a writing under seal, covenanted and agreed, in consideration of $500 to him paid by Talmage, one of the defendants, that he would not, at any time thereafter, sue or levy on the property of Talmage; and in case any proceedings were had, continued, or prosecuted, that the said writing should be deemed, to all intents, and purposes a release to him, Talmage. Plaintiff continued to prosecute the suit; whereupon Mills, another defendant, pleaded puis darrein continuance, that the writing was and became an absolute release to him, also. But the court —Nelson, Ch. J., delivering the decision—was of a different opinion, holding that it was manifest, from the whole scope of the instrument, that it was not intended to have the operation and effect of a technical release upon the subject matter of the suit. And in the concluding paragraph of the opinion, the chief justice said: "The main ground is, that to construe it into a technical release of all, would be carrying the obligation beyond the obvious intention of the parties. If it has been intended to be so understood, more direct and pertinent language would have been used, clearly indicating the intention to embrace all the promissors."

In Couch v. Mills, the language used in the instrument is, in the most material part, similar to, and, in my judgment, of like import with that in the instrument in the case now before the court. There, the plaintiff, in consideration of $500 paid to him by Talmage, one of the defendants, covenanted and agreed with him that if he, the plaintiff, continued or prosecuted the action against Talmage, the writing should be deemed, to all intentions and purposes, a release to him. Here, the plaintiffs, in consideration of $939.33 paid to them by Bryson, did remise and release him from all individual liability to · them, incurred by reason of such connection with the said co-partnership firm of Bryson & Beaumont. To neither of these writings obligatory were any of the other defendants' parties. Only one other case will be noticed—North v. Wakefield, 13 Q. B. 536. It was decided in 1849, ten years after Couch v. Mills. The plaintiffs brought debt on a promissory note for £1,000, made by defendant, payable to the plaintiffs. Among other pleas of defendant, he pleaded that the note was the joint and several note of himself and one Goddard, and that after the making of the note, the plaintiffs, by a deed-poll, and without the consent of the defendant, released Goddard and thereby then released defendant from the same. On the trial, defendant proved a deed-poll, executed by the plaintiffs and others, by which, in consideration of a composition of four shillings in the pound on their respective debts paid by Goddard, they released him from the payment of their several and respective debts. The deed contained a proviso that the release should not operate to invalidate, prejudice or affect any other securities given or payable by Goddard, together with any other person or persons, jointly or severally, and whereby any other persons might have become liable as security for Goddard, but that the said several creditors of Goddard should and might execute the deed without prejudice to such securities as to the claim thereon against surety &c. It was admitted that the sum placed opposite to the plaintiffs' names in the deed included the amount of the promissory note then sued on. Pattison, J., in delivering the judgment of the court, said: "Now the deed contained an express clause that the release to Goddard should not operate to discharge any one, jointly or otherwise liable to the plaintiffs for the same debts. It is plain, therefore, that it did not release the defendant. The reason why a release to one debtor releases all jointly liable, is, because, unless it was held to do so, the co-debtor, after paying the debt, might sue him who was released, for contribution, and so in effect he would not be released; but that reason does not apply where the debtor released agrees to such a qualification of the release as will leave him to any rights of the co-debtor."

By three of the cases referred to—Solly v. Forbes, Couch v. Mills, and North v. Wakefield—it is quite well established that where several are bound by a joint, or joint and several contract, a creditor may release one and reserve his action against the others. In the first and third of those cases, the reservation of the remedy was expressly provided for. In Couch v. Mills, the saving of the action against Mills was not made in direct and express terms; it rested upon negative construction. And Nelson, C. J., said: "The language of the instrument, as set forth, is undoubtedly very particular; but it is mani-

fest from the whole scope of it that it was not intended to have the operation and effect of a technical release upon the subject-matter of the suit, but only to protect the rights of the covenantee, which may be done by a cross action, if he suffers." So in the case at bar; the plaintiffs; after stating the indebtedness of the co-partnership firm to them, in consideration of a sum of money to them by Bryson then paid, release him from all and every individual liability to them (the plaintiffs) incurred by reason of such connection with such firm.

The question is, does the writing as set forth, constitute a bar to the action, as to all or any of the partners, co-makers of the notes? I am of the opinion that it was meant to release Bryson, but not Beaumont nor Wallace. It was to extend to Bryson's individual liability only—no farther; it did not discharge him from his liability as a partner; his interest in the assets of the social concern is still bound; nor did it release him from answering to any suit at law or in equity which his co-partners may institute against him for contribution or otherwise, if they or either of them pay more than a proportionate share of the debt. Such, doubtless, was the intention of the parties to the instrument; and that intent is, in my judgment, effectuated by the language of the instrument itself. The contract between the plaintiffs and defendant Bryson was, briefly, this: Pay us a certain sum of money, and we will look to the partnership assets, so far as they may be sufficient, for the residue of the debt; and if they fall short, we bind ourselves not to hold you further; making no stipulation, however, as to your accountability to your co-partners.

There must be judgment for the plaintiffs on each of the demurrers. The clerk will award a venire, as well to try the issues of fact joined upon the other pleas, as to inquire of the damages upon the issues in law in the pleas demurred to.