## Case No. 3,047.

### COLUMBUS, P. & I. R. CO. v. INDIANAPOLIS & B. R. CO.

[5 McLean, 450.][1]

Circuit Court, D. Indiana. 1853.

CONTRACT BETWEEN RAILROAD COMPANIES — LEGALITY—RESTRAINING BREACH — ABANDONMENT OR TRANSFER OF FRANCHISE.

1. When two railroad companies agree to build a road from certain cities, to connect with each other at a given place, and that the charges for transportation shall be regulated by both companies, and also the meeting of the cars, and the through freight cars, if one of the companies shall change its gauge so as to break up the connection contemplated, an injunction will be granted, to prevent the change of gauge.

2. A contract entered into to make the gauge, by one of the parties, contrary to the law of the state, such contract is not illegal, if it appear it was made in reference to an alteration of the act, and such alteration was procured, before any part of the track was laid.

[Cited in Cook v. Hamilton County Com'rs, Case No. 3,157.]

3. To fix the charge for the transportation of passengers and freight, is the exercise of the franchise by each company, and if they agree that both companies shall regulate this, it is no abandonment or transfer of the franchise of either.

Stanbery, Blackford & James, for complainants.

Andrews & Yandes, for defendants.

OPINION OF THE COURT. On the 30th of January, 1852, the parties in this case entered into the following agreement: "It is mutually agreed by and between the Indianapolis and Bellefontaine Railroad Company of Indiana, of the one part, and the Columbus, Piqua, and Indiana Railroad Company, of Ohio, of the other part, as follows: The lines of said roads from the city of Columbus, Ohio, to the city of Indianapolis, Indiana, shall meet at Union on the line between the said states, in direct connection in the same depot building, and shall be for transportation of freight and passengers a through line between the cities, each company receiving upon the through freight and passengers, in proportion to the length of the road in each, which freight and fare of passengers shall be fixed by the two roads, and to carry out which each shall be authorized to give through tickets, and freight bills on the route, to be accounted for on settlement. The time of running and meeting of the cars, and through freight cars, shall be arranged by the

two companies, so as to carry into effect, in good faith, the through business connection on the roads between the two states." This contract was ratified by both boards. Sometime after the above contract was entered into, a further agreement, in regard to the gauge of the road, was considered necessary; and the president of the Indiana board made a contract with the Ohio company, that the gauge on the entire road should be four feet eight and a half inches. The Ohio gauge was fixed by statute at four feet ten inches; and other gauges were prohibited. This contract was never ratified by the Indiana company; and a great number of depositions were taken to show, from the usage of the company, that the contract, made by the president, was binding on it, though not ratified by it. Under the above contract it became necessary for the Ohio company to procure an act of the Ohio legislature, to legalize the gauge it had agreed to establish; and a law to that effect was obtained some four months after the contract was entered into. It was admitted by the parties, that when the first contract was made to connect the two roads at Union, about forty-five miles of the Indiana road was completed from Indianapolis in the direction to Union. These are the leading facts in the case, and the complainants, in their bill, represent that the defendants are about to change the gauge of their road, so as to defeat the connection agreed upon by the two companies, requiring at Union a change not only of the passenger cars, but also the cars carrying freight; and it is alleged that the same gauge has been adopted as the Cleveland road, to the material and irremediable mischief of the Columbus company, except by an injunction to restrain the Indiana company from carrying out its contract with the Cleveland Railroad Company.

I do not deem it necessary to look into the depositions taken to show that the second contract, as to the gauge agreed upon, was binding on the Indiana company. I think the first contract between the two companies, embraces all the rights of the complainants, which are claimed under the second contract. The contract provided for a road from Indianapolis to Union, and thence to Columbus, in Ohio. It is admitted by the parties that at this time, about forty-five miles of the Indiana road, in the direction to Union, was completed; and that the gauge of that part of the road was four feet eight and a half inches. It also appears that the Ohio company applied to the legislature, and procured an act which legalized the gauge they contracted for, and which conformed to the gauge of the Indiana road. No one can read the contract and not see, that the freight cars were to be run through the entire route. The words are, "The time of running and meeting of the cars, and through freight cars shall be arranged by the two companies, so as to carry into effect, in good faith, the through

[1] [Reported by Hon. John McLean, Circuit Justice.]

6 FED. CAS.—13

business connection on the roads between the two states." The running and meeting of the cars would not refer to the through freight cars. If the freight cars are to be run through, they don't meet, in the sense spoken of. The change of freight cars would cause great delay and expense, especially if the freight consisted of live stock. But the passengers can change cars in five minutes. It was therefore proper to provide for the meeting of the passenger cars, and also to regulate "the through freight cars." If the freight cars were to be run through the whole line, it is clear that the gauge must be the same throughout the line. But there is another fact equally conclusive; the Ohio end of the line was made of the same gauge of the Indiana although different from the Ohio gauge provided for by statute, and to authorize which, an act of the Ohio legislature was procured by the Ohio company. And it appears the greater part of the Ohio road has been completed. But there is another consideration which, if possible, is still more conclusive. At the time the first contract was made, it is admitted that more than forty miles of the Indiana road was completed, which was the line of road embraced by the contract. It could apply, from the description in the contract, to no other route. Can a railroad be made without a gauge? In the nature of things this is impossible. It follows then, necessarily, that the gauge of the entire road was the gauge of the Indiana road that was completed, and which was embraced by the contract. Can anything be more conclusive than this? But in addition to these facts, the Indiana company extended its road to Union, or near to it, and the Ohio Company built the Ohio road to Piqua, or near to it, from Columbus, and both roads were made of the gauge of the Indiana road, which had been made before the contract was signed. The work on both sides of Union, under the contract, shows the construction of it by both companies.

An objection is made to the legality of the contract to build the Ohio part of the road, as the gauge is in violation of the Ohio statute. To this it is answered in argument, that the defendants cannot take advantage of the objection, as it is a matter which rests between the state and the complainants, and that the state only can raise this objection. I am not prepared to say that any party, who is called upon specifically to execute a contract may not set up the illegality of that contract, as being against an express statute. But the answer to the objection that although the contract was made, it was with reference to a future execution of its conditions, when the modification of the law of Ohio should be obtained, which removed the objection. And it in fact appears that the construction of the road, by laying down the rails, was not commenced until long after the passage of the amended act by the legislature of Ohio. The law, therefore, was not

violated under the contract, nor was it intended to be violated.

It is further alleged that, under the contract the respective companies, by acting together in fixing the rates for the transportation of passengers and freight, conveyed a part of their franchise, which they had no power to do. There is no part of the contract which, in this respect, affects the franchise of either company. The companies may agree, as individuals may agree, to certain rates of transportation which may be considered mutually advantageous. Neither company has parted with its corporate powers; each acts for itself, and under its own powers in fixing the rates of transportation, and they both agree that the charge shall be uniform throughout the line.

An injunction will be issued to prevent the Indiana company from changing its gauge, from Indiana to Union, which it has expressed a determination to do, and had actually commenced the work.