MOUCH v. INDIANA ROLLING MILL COMPANY ET AL.

[No. 12,331. Filed March 18, 1926. Rehearing denied December 23, 1926. Transfer denied December 17, 1931.]

By the court in banc.

*Ed K. Adams, W. A. Hough* and *George D. Forkner*, for appellant.

*William O. Barnard, Moses B. Lairy, Raymond L. Walker* and *Samuel M. Ralston,* for appellees.

ENLOE, P. J.—On and prior to June 27, 1917, the appellant was the owner of the major portion of the common stock of appellee company; on that date, a preliminary contract was entered into between appellant and one Ingersoll for the sale of said stock so owned and held by appellant. On July 12, 1917, the contract of sale was reduced to its final form and terms and duly signed by said parties. In said contract so thus signed was the following: "It is further agreed by the parties

that if there be any income tax on said corporation for the year ending June 30, 1917, said Mouch shall pay 72.8 per cent of said tax and said Ingersoll shall pay .27.2 per cent of said tax, provided—That if said tax shall not exceed Two Thousand Dollars, Ingersoll shall pay all of said tax."

At the time this contract was signed, there was in force the act of September 8, 1916 (39 Stat. at L. 756), levying a tax on certain incomes, and also the act of March 3, 1917 (39 Stat. at L. 1000), making certain designated increases in the tax on incomes as fixed by the former law. After the contract had been signed and the property transferred, Congress, on October 3, 1917, passed what is commonly known as the "War Tax Act" (40 Stat. at L. 300), and made the same retroactive, so as to apply to and cover incomes and profits for the fiscal year ending June 30, 1917. Subsequently, appellee corporation was called upon to pay and did pay the additional sum of $17,819.04, and demanded of appellant that he repay to it 72.8 per cent thereof, or $12,972.50, with which demand he refused to comply, and this suit followed.

Numerous errors are assigned and presented on this appeal, but they all center about the one question: What was the liability of appellant, as to the income taxes, under his said contract; was he liable for the increased taxes due under the act of October 3, 1917?

Objection is made to the sufficiency of each paragraph of the complaint herein, and we shall first notice this objection.

It appears by the averments of the complaint that the appellant duly made an income-tax return for the appellee company, covering the business of said company for its fiscal year ending June 30, 1917, and that the tax assessed as due the United States upon this report, viz., $2,817.75, was duly paid, and that appellant paid 72.8

per cent thereof. It also appears by said averments that thereafter appellee company was called upon by the federal government to make additional corrected returns, which it made, and that, upon these returns, additional tax, under both the act of September 8, 1916, and also under the act of October 3, 1917, was assessed, which was paid by said appellee, and of which tax so assessed under the act of September 8, 1916, appellant has not paid his said proportional part. So that whether appellant is liable or not for the payment of 72.8 per cent of the tax due under the act of October 3, 1917, the pleadings state a cause of action as to the taxes paid under the act of September 8, 1916, and the court did not err in overruling said demurrer.

The only other question which we need to decide is: Is the appellant liable for the 72.8 per cent of the tax assessed under the act of October 3, 1917?

It is elemental that terms of a contract which are implied, although implied, are as much a part of the contract as though they had been expressly written therein. This is simply the statement of another phase of the rule, so often declared in matters of agency, that a power impliedly granted is as effectively granted as if it had been expressly granted. In matters of contract, it is also elemental that existing statutes and the settled law of the land at the time a contract is made become a part of it, and must be read into it, unless, by apt words *in the contract,* such law is expressly excluded. Under this rule, the acts of September 8, 1916, and March 3, 1917, clearly became a part of the contract in question, and the agreement was for the appellant to pay a stipulated per cent of the taxes which might be levied under said acts. Had the act of October 3, 1917, not been passed, there certainly could have been no serious difference between the parties hereto as to their rights, duties and liabilities under said contract.

It is the contention of appellee that, prior to the execution of the contract in question, the matter of future legislation on the subject of taxes was talked about; that it was suggested that Congress might amend the existing law, and increase, to a considerable extent, the taxes to be levied and collected, and that, under their final agreement, as actually understood and made, though not expressly so stated in the written contract, appellant agreed to pay the stated per cent of any and all taxes that might be levied by the federal government as "income taxes" upon the business done and profits made by appellee corporation during the fiscal year ending June 30, 1917. Upon the trial, the court, over objection by appellant, permitted witnesses to testify as to such conversations as aforesaid, had between appellant and said Ingersoll. If the parties may, by their conversation and private understanding, make and *include* as a part of their contract *a future statute*, why may they not also, by their private understanding and agreement, *exclude* from the operation of their contract an existing statute? In 6 R. C. L. p. 856, it is said: "However, from the fact that every contract, not expressly providing to the contrary, is presumed to have been made with reference to the then existing state of the law, it follows that if a subsequent change is made therein which in any degree affects such contract, such change is presumed to be excepted therefrom." In *Fuller* v. *Kane* (1896), 110 Mich. 549, 68 N. W. 267, 64 Am. St. 362, 34 L. R. A. 308, the matter of statute law entering into contracts was under consideration. It appears that, under the law of Michigan prior to 1891, mortgages were assessed against the mortgagee, and land was assessed against the owner. In 1891, this law was changed and mortgages were assessed as "an interest in the land," and the mortgagor was relieved from taxation upon so much of his property

as the interest of the mortgagee represented. Prior to the passage of this law, a mortgage had been executed in which the mortgagor had agreed "to pay and discharge, or cause to be paid, within the time prescribed by law, all such taxes and assessments as shall by any lawful authority, while the money secured by these presents remains unpaid, be levied and imposed upon said premises," etc. . . . . The mortgagee contended that, under the terms of the mortgage, it was the duty of the mortgagor to pay all of said taxes, and the court, in passing upon the question, quoted from Pollock, C. B., in *Mayor of Berwick* v. *Oswald* (1854), 3 El. & Bl. (Eng.) 678: "Every contract (which does not expressly provide to the contrary) must be considered as made with reference to the existing state of the law, and if, by the intervention of the legislature, a change is made in the law which in any degree affects the contract, such contract, *made without some clear and distinct reference to the prospect and possibility of a change,* does not hold with reference to the state of things as altered by the new law." (Our italics.)

The court also quotes from Endlich, Interpretation of Statutes §461, where it is said: "The intervention of the legislature in altering the situation of the contracting parties is analogous to a convulsion of nature, against which they no doubt may provide, but, if they do not provide, it is generally to be considered as excepted out of the contract." In *Paret* v. *Bryson* (1868), 18 Fed. Cas. 1090, No. 10,710, the court said: "Since hearing the very able arguments in this case, a doubt has suggested itself to my mind whether the writing pleaded as a release by Bryson and Wallace, respectively, can, from its own language, be judicially considered as founded upon the New York statute. Such intention may have been in the mind of the plaintiffs, and also that

of the defendant, Bryson. But is this intention made manifest? Can it be gathered from the instrument itself?—for it cannot be collected by the aid of extrinsic evidence. . . . I am clearly of the opinion that even if the plaintiffs and the defendant Bryson, at the time of the making of the deed, had the statute in view, and intended to place it within that governing power, such intention does not appear on the face of the deed. Therefore, as was contended for the defendants, it must . . . be construed under the guide of the common law." In the case at bar, it was competent for the parties to contract with reference to future legislation on the part of Congress, but the law requires of them that, if they so contract, such intention shall be made to clearly appear from the contract itself, and cannot be left to inference or to proof *aliunde* the contract as written. To permit parol testimony as to what was the actual agreement of the parties, outside of that expressed in the contract, would be to permit a written contract to be varied by parol testimony. We hold that the appellant is liable under his said contract for any income taxes rightly assessed under the laws in force at the time said contract was made, and that he is not liable for the taxes levied under the act of October 3, 1917. We also hold that the court erred in admitting the testimony, over objection of appellant, as to said conversations had between appellant and said Ingersoll at and prior to the time of the execution of said contract. As the finding of the court as to the amount due from appellant to appellee included money paid under act of October 3, 1917, it was to this extent erroneous.

The cause is reversed, with direction to sustain appellant's motion for a new trial, and for further proceedings consistent with this opinion.