THE BARBASOL COMPANY, INC. *v.* LEGGETT.

[No. 15,942. Filed February 27, 1939.]

*Thomas E. Kane, James F. Sargent,* and *Thomas D. Stevenson,* for appellant.

*L. B. Ewbank, E. W. Hoover,* and *Wymond J. Beckett,* for appellee.

STEVENSON, P. J.—The appellee sued the appellant for breach of contract, her complaint being in two paragraphs. The first paragraph of complaint sought to recover the sum of $50,000.00 stipulated in the contract

as money due and owing. The second paragraph sought to recover damages for breach of contract. To this complaint the appellant filed an answer in three paragraphs. The first paragraph was a general denial; the second, a plea of payment; the third set up facts showing a rescission of the contract.

This cause was submitted to a jury for trial and the jury returned a verdict for the appellee in the sum of $30,000.00 The error assigned in this court is the alleged error in overruling the motion for a new trial.

Among the errors assigned and discussed by the appellant in its brief are certain instructions which place an interpretation upon the provisions of the contract involved in this case. This contract was entered into on the 8th day of August, 1932, and involved the manufacture and sale of a cleansing cream, the formula for which had been discovered by the appellee. After reciting these facts, the contract provided that the appellant should enter upon the manufacture and sale of the cleansing cream and would devote its best efforts to the production of a high-class product and to the creation of a profitable market therefor. The contract gave the appellant the right to use its own judgment as to the best method for distribution and sale. The contract then set out the respective rights of the parties in paragraphs 3, 4, and 5, and since these paragraphs are the basis of this litigation, we quote them verbatim, as follows:

"3. When and if First Party shall conclude that a profitable market can be created for said proposed cleansing cream, of which First Party shall be the sole judge, First Party agrees to start paying to Second Party the sum of One Hundred Dollars ($100.00) per month, which said payments to Second Party shall continue until such time as First Party shall determine that said cleansing cream cannot be manufactured and sold at a profit, in which event and at which time, First Party shall have the

right to entirely discontinue such manufacture and sale, whereupon payments as above provided to Second Party shall immediately cease and thereupon there shall be no further liability on the part of the First Party to Second Party.

"4. In the event First Party shall succeed in building up the gross sales of said cleansing cream to the sum of One Hundred Thousand Dollars ($100,000.00) per annum, at such time, First Party agrees to increase the payments to Second Party to the sum of Two Hundred Dollars ($200.00) per month in place of the sum above provided and in the event the gross sales of said cleansing cream shall reach the aggregate of Two Hundred Thousand Dollars ($200,000.00) per annum, First Party agrees thereupon to increase the payments to Second Party to the sum of Five Thousand Dollars ($5,000.00) per annum, payable in equal monthly installments, said sum to be paid Second Party by First Party as long as the gross sales of said cleansing cream shall not be less than Two Hundred Thousand Dollars ($200,-000.00) per annum, provided however that should the yearly sales of said cleansing cream, after having reached the sum of Two Hundred Thousand Dollars ($200,000.00) per annum, thereafter decrease below said amount, but above the aggregate sum of One Hundred Thousand Dollars ($100,000.00) per annum, Second Party shall receive only the sum of Two Hundred Dollars per month and should such decrease continue to less than One Hundred Thousand Dollars ($100,000.00) per annum, Second Party shall thereupon receive only One Hundred Dollars ($100.00) per month and nothing herein shall be construed as limiting or restricting the absolute right of First Party at such time as it may feel or believe the business of manufacturing said cleansing cream to be unprofitable to wholly and absolutely discontinue such manufacture and sale, whereupon and in which event, all liability hereunder of First Party to Second Party shall immediately cease and terminate.

"5. In the event the business of manufacturing and selling said cleansing cream shall progress to such point that First Party may desire to be relieved of making to Second Party the monthly payment herein provided for it is hereby agreed by and

between the parties hereto that, at such time, First Party shall have the right to pay to Second Party the lump sum of Fifty Thousand Dollars ($50,-000.00), which said sum Second Party hereby agrees to accept in full payment and satisfaction of all and singular her rights under this agreement and upon the payment of such sum by First Party and the acceptance of same by Second Party, all and singular Second Party's rights under this agreement shall immediately and absolutely terminate and cease."

The remaining paragraphs of the contract gave the appellant the right to select the name for the cleansing cream and provided that the appellant should keep an accurate cost accounting system and should have the right to determine as to whether or not said business could be profitably conducted.

The evidence discloses that the appellant did undertake and enter upon the manufacture and sale of the product and paid the appellee the sum of $100.00 per month until June 30, 1933, at which time they determined that the product could not be successfully marketed and on June 30, 1933, the appellant notified the appellee by letter that the manufacture and sale of said product could no longer be profitably conducted and that they were cancelling their contract with her. Following the receipt of this letter, the appellee filed suit for breach of contract. On the trial of said cause the court, among other instructions, gave instruction No. 3, which reads as follows:

"It is provided in said contract that when the first party, the Defendant, shall conclude that a profitable market can be created for said proposed cleansing cream, of which the Defendant shall be the sole judge, the Defendant agrees to pay to the Plaintiff the sum of One Hundred ($100.00) Dollars per month, which payments shall continue until such time as Defendant shall determine that said cleansing cream cannot be manufactured and sold at a profit, in which event and at which time the Defendant shall have the right to entirely discontinue such manufacture and sale whereupon payments as

above provided to the Plaintiff shall immediately cease, and thereupon there shall be no further liability on the part of the Defendant to the Plaintiff.

"The Court instructs you that the part of the aforesaid contract only provides for a discontinuance of the manufacture and sale, and not for a cancellation and ending of all the rights and interest of the Plaintiff in said cleansing cream under said contract; and the liability of the Defendant to the Plaintiff therein referred to means the liability for the payment of said monthly payments during the time when the manufacture and sale shall be discontinued by Defendant, as aforesaid."

As bearing upon the further interpretation of this contract the court also gave its Instruction No. 5, which reads as follows:

"If you find from the evidence that Defendant undertook to and did prepare for execution by Plaintiff and itself the contract sued on and that Defendant as First Party, and that Plaintiff as Second Party executed it as so prepared, and in pursuance of its provisions entered upon its performance, then I instruct you that the provisions of the paragraph numbered five thereof, that

'In the event the business of manufacturing and selling said cleansing cream shall progress to such point that first party may desire to be relieved of making to second party the monthly payments herein provided for, it is hereby agreed by and between the parties hereto that, at such time, First Party shall have the right to pay to Second Party the lump sum of fifty thousand ($50,000.00) dollars, which said sum Second Party hereby agrees to accept in full payment of all and singular her rights under this agreement, and upon payment of such sum by First Party and acceptance of same by Second Party, all and singular Second Party's rights under this agreement shall immediately and absolutely terminate and cease.'

"expressed the only condition on which the right was reserved to Defendant, to cancel and absolutely terminate said contract, and to free itself from the obligations it had assumed by executing the same.

"So if you find from the evidence that Defendant

after having entered upon the performance of said contract did desire to be relieved from its obligation thereunder and did quit making payments to Plaintiff and continuously since has refused to pay her any more money and did cancel the contract, then you may find for plaintiff and your verdict should be for the plaintiff in the sum of $50,000.00."

The appellant contends that these instructions were clearly erroneous and placed an interpretation upon the contract that was wholly unwarranted by and contrary to the express language thereof.

The evidence in this case deals largely with things done by the parties after the signing of this contract and this evidence is not helpful in determining the proper interpretation to be placed thereon.

The rule is that "where all the rights, duties and obligations existing between the parties are couched in a contract, the construction and meaning of that contract is a question of law for the court and not a question of fact for the jury to determine." *Estes* v. *Anderson Oil Co.* (1931), 93 Ind. App. 365, 176 N. E. 560.

This contract under consideration is not ambiguous. It was accordingly the duty of the court to construe it in such a manner as to be consistent with the language employed (*Thomas* v. *Hennes* [1922], 78 Ind. App. 275, 135 N. E. 392), and after a consideration of all its provisions in such a manner as would tend to show the true intention of the parties as gathered from the whole instrument. *Sindlinger et al.* v. *Department of Financial Institutions* (1936), 210 Ind. 83, 199 N. E. 715. A further well recognized rule of law requires a court to accept a construction of a contract which harmonizes the provisions thereof, if that can reasonably be done, as against a construction which causes the provisions thereof to be conflicting. *Prudential Ins. Co.* v. *Citizens T. & S. Bk., Gdn.* (1935), 101 Ind. App. 168, 198 N. E. 116.

With these rules of construction in mind, we turn to the provisions of the contract in question. The intention of the contracting parties is obvious. The appellee furnished the appellant with a formula to be used as a basis for the manufacture of a cleansing cream. The matter of manufacture, distribution and sale was left entirely to the management of the appellant. The contract then provides that "when and if the First Party (appellant) shall conclude that a profitable market can be created for said proposed cleansing cream of which the First Party shall be the sole judge" then the appellant agreed to start paying the appellee the sum of $100.00 per month, said payments to continue until such time as the appellant should decide that the cleansing cream could no longer be marketed. When that time arrived the contract provided that the appellant should "have the right to entirely discontinue such manufacture and sale." It seems to us that there can be no ambiguity in such a statement. The right to entirely discontinue such manufacture and sale certainly authorizes an abandonment and termination of the enterprise, "and," in the language of the contract, "thereupon there shall be no further liability on the part of the First Party to the Second Party." We are at a loss to understand how a contract which gives a manufacturer the right to entirely discontinue the manufacture and sale of a product and when such a right is exercised relieves him from further liability, can be so interpreted as to leave pending further obligations.

But if there is some doubt remaining as to this liability, clause 4 of the contract provided that should the appellant succeed in building up a business to the extent that the gross sales of said cleansing cream reached $100,-000.00 per year, the said payments to appellee should be increased to the sum of $200.00 per month. And in the event that gross sales should reach the aggregate of

$200,000.00 per year, then the payments to the appellee should be made on the annual basis of $5,000.00, payable in equal monthly installments. This amount was the maximum royalty which the appellee could receive under this contract and this was to be paid only so long as the gross sales exceeded $200,000.00 per annum. In order that there might be no mistake as to the amount of these royalties, the contract then contained the further provision that, should there be a falling off of sales after having reached the sum of $200,000.00 per year, then so long as the sales were between $100,000.00 and $200,-000.00 per year the royalties payable to the appellee should again be $200.00 per month and if the sales would continue to decrease to less than $100,000.00 per annum, then the $100.00 per month payments should prevail. The parties again placed their intention in definite language and the contract recites that "nothing herein shall be construed as limiting or restricting the absolute right of the First Party (appellant) at such time as it may feel or believe the business of manufacturing said cleansing cream to be unprofitable to *wholly and absolutely discontinue such sale,* whereupon *all liability* hereunder of First Party to Second Party shall immediately cease and terminate." When this language is again repeated and in stronger terms, it seems to leave no room for doubt that the appellant was entirely within the rights conferred by the contract when it elected to wholly and absolutely discontinue the manufacture and sale of this product. We are not impressed with the argument that this right was only a right to temporarily discontine the manufacture and sale of this product. To place such interpretation thereon would be to entirely disregard the words *wholly and absolutely.* "In construing any contract, the words used therein are to be understood in their plain, ordinary, and proper sense unless there is something in the contract to indicate a different mean-

ing." *Murphey* v. *Inter-Ocean Casualty Company* (1934), 98 Ind. App. 668, 671, 186 N. E. 902. To our minds the right to "wholly and absolutely discontinue" the manufacture and sale of a product means a right to cease and quit such business. If the appellant should so determine to quit business then the contract provided that "all liability hereunder shall immediately cease and terminate." In the face of such language it is difficult to understand how the court could inform the jury that even though the appellant should quit business because the same was unprofitable, there would yet remain a liability to the appellee under this contract. In spite of the fact that the contracting parties have agreed that the appellant shall have the right to entirely, wholly, and absolutely discontinue the manufacture and sale of this product in which event "there shall be no further liability" and *"all liability* hereunder shall immediately cease and terminate," the court instructed the jury in Instruction No. 3 that the liability "referred to means the liability for the payment of said monthly payments." The language of the contract does not permit such interpretation.

But in order to provide for every possible contingency that might arise during the conduct of the business contemplated by the parties, paragraph 5 of the contract set forth yet another option which the First Party (appellant) might exercise if it so desired. It will be noted that all conditions respecting the payment of royalties to the appellee have been provided for in paragraphs 3 and 4 of the contract. When the gross sales of the manufactured product should exceed $200,-000.00 per annum then the appellant was obligated to pay appellee on the basis of $5,000.00 per year. Nothing appears in the first four paragraphs of the contract as to how long such a program is to continue. Paragraph 5 accordingly provides that "in the event the business of

manufacturing and selling said cleansing cream shall progress to such a point that First Party (appellant) may desire to be relieved of making to the Second Party (appellee) the monthly payments herein provided for" then the appellant shall have the right to buy out all the rights and interests of the appellee for a lump sum of $50,000.00. The court instructed the jury that this was the only method by which the appellant could "free itself from the obligations it had assumed by executing the contract." Here again this instruction does violence to the obvious intention of the parties and to the language of the instrument. This right of the appellant to buy out the appellee's interest was in the nature of an option which the appellant could exercise in the event the business progressed. The common and accepted meaning of the term "progress" is a "going forward." We can hardly conceive of a situation wherein intelligent individuals would contract to pay $50,000.00 for the rights and interests in a business which had been tried out and had been proven wholly unprofitable. It is readily conceivable however that the parties might be agreeable to a purchase and sale of the interests of one in a business whose gross sales exceeded $200,000.00 per year where the prospects and all indications pointed to a continued growth. Particularly is this true where such sale would relieve the manufacturer from a long and indefinite obligation to pay the other contracting party $5,000.00 per year in the nature of a royalty from the receipts of said business. This contract plainly provided that in the event the business should be unprofitable, the appellant should have the right to absolutely and entirely discontinue such manufacture and sale in which event all liability under this contract ceased. Yet in view of these provisions the court instructed the jury in Instruction No. 5 that the appellant was still obligated to pay the appellee $50,000.00 if it desired to terminate the contract. Such instruction was clearly erroneous. The ap-

pellee seeks to invoke the rule that since this contract was prepared by the appellant and its attorneys all doubts and ambiguities must be resolved in favor of the appellee. There is, however, no ambiguity in the contract under consideration. What was intended by the parties is not in doubt. Yet, the court gave Instruction No. 4, which reads as follows:

"If you find from the evidence that the alleged contract set out in the complaint was prepared by Defendant and its officers and submitted to Plaintiff for execution and as so prepared was executed by Plaintiff without advice except from said officers, and that Defendant concluded a profitable market could be created for the proposed cleansing cream, and the parties entered upon the execution of the contract, then I instruct you that the only right of Defendant to terminate such contract by cancellation reserved to Defendant by such contract, was the right to pay to Plaintiff the lump sum of fifty thousand dollars in satisfaction of all her rights thereunder."

This instruction was also erroneous. If the meaning of the contract was plain, and we have so held, it was immaterial whether it was prepared by the appellant or by the appellee. *Beck, etc., Co.* v. *Evansville, etc.* (1900), 25 Ind. App. 662, 58 N. E. 859.

Appellee further contends that the appellant's rights under this contract were two-fold—that it could either discontinue the manufacture and sale of the cleansing cream, thereby leaving to the appellee whatever other rights she might have in the contract, or they might terminate the contract by paying appellee $50,000.00; that the appellant elected to terminate the contract and was therefore bound to pay the sum stated.

We cannot agree with this contention. This contract gave the appellant the right to absolutely and entirely discontinue the manufacture and sale of this cleansing cream if they found the business unprofitable. When they so determined, the appel-

lee was left without any further rights in this contract. All liability to her under the contract was terminated.

Other errors were assigned and discussed by the appellant in its brief, but since these may not arise upon the retrial of this case, we do not deem it necessary to discuss them in this opinion.

For the errors contained in the instructions above noted this judgment is reversed with instructions to the trial court to sustain appellant's motion for new trial.

Judgment reversed.