HOWE FIRE APPARATUS COMPANY *v.* HUMPHREY.

[No. 17,080.   Filed February 3, 1943.   Rehearing denied March 15, 1943.]

*William E. Hart* and *White, Wright & Boleman,* all of Indianapolis, for appellant.

*S. Lloyd Garrison* and *Worth H. Castor,* both of Noblesville, for appellee.

DOWELL, J.—The appellant, Howe Fire Apparatus Company, brings this appeal from an award of compensation made to the appellee, Charles Humphrey, by a majority of the full Industrial Board of Indiana, for injuries alleged to have been sustained by the appellee, as the result of an accident which occurred on March 11, 1941.

The sole error assigned by the appellant is that the final award of the full Industrial Board of Indiana is contrary to law.

The following facts appear from an examination of the transcript of testimony adduced at the hearing and of the briefs of the parties:

On November 9, 1939, a contract of the following tenor was entered into between the appellant and a partnership designated, "H. S. Mohler and C. W. Humphrey, Night Watch Service":

"Mohler and Humphrey,
    Night Watch Service,
        Anderson, Indiana.

           "SERVICE CONTRACT.

                November 9, 1939.

"To: Howe Fire Apparatus Company,
        Anderson, Indiana.

"Gentlemen:

    "We, H. S. Mohler, and C. W. Humphrey, Night

Watch Service, propose to supply you with our service from the hours of 4:20 P. M. to 6:40 A. M. starting on November 12th, 1939, and continuing until you advise us to discontinue the service. Our service includes the following:

"1. We are to call at your place of business every single hour thruout the night, and inspect the external doors of your place of business, and see that the doors are locked, also check the windows, and see that the windows are all shut.

"2. We will also, if you will give us a key to the door and permission to enter your premises, inspect the heating plant which you may have going in your place of business.

"3. In the event that we find anything wrong, we will call the Police Department, the Fire Department and/or any other individual that you may designate, as the case may require.

"4. In the event you require further watchman service than called for above, we agree to include the following: A—Inspect sprinkler system in making rounds thru you— plant, during which rounds we will ring clocks at the various stations. B—Provide watchman service on Saturday afternoons from 11:40 A. M. to 4:20 P. M. and also during the day time on Sunday starting at 6:40 A. M. and lasting thruout the day until 4:20 P. M. C—On nights when a fire truck is left pumping at your factory cisterns, he will inspect same on our usual rounds thru your plant. Our extra recompense for inspection of fire trucks during nights running is to be $2.00 per night. D—We understand that you wish no one admitted to the plant, unless it would be Ben Howe, Lewis Howe, A. O. Barnes, or Jack Leever, without a written order signed by B. Howe, or L. G. Howe.

"Our recompense for the above Watchman's Service is to be $60.70 per month, payable on the first and fifteenth day of each month.

"MOHLER AND HUMPHREY
Per H. S. Mohler.

"ACCEPTANCE.

"Mohler and Humphrey,
Night Watch Service,
Anderson, Indiana.

"Gentlemen:

"We have read over the above contract, find it satisfactory, and wish to notify you that we want your Night Watch Service, as above outlined, to start November 12th, 1939.

"Very truly yours,
HOWE FIRE APPARATUS COMPANY,
Per Ben Howe,
President."

Although appellee's signature is not subscribed to this contract the evidence is conclusive as to the fact that he was present and assenting at the time same was executed and is also conclusive as to the fact that such partnership did exist between himself and Mohler.

Presumably the services contemplated under the contract began on the date stipulated therein, i. e., November 12, 1939.

According to the testimony of the appellee this type of service also was furnished to others whose places of business were situated in the same building as that occupied by appellant.

On March 11, 1941, the appellee, in order to make minor repairs to a stoker, which served the apparatus used to maintain heat in the building, was sawing a board with a buzz saw when the saw caught the end of the appellee's left thumb, lacerating same to the extent that it had to be amputated below the first phalanx.

In this accident the appellee received injuries for which the Industrial Board of Indiana awarded compensation against the appellant at the rate of $7.00 per week for a period of sixty weeks together with

medical, hospital, surgical and nurse services for a period of ninety days beginning March 11, 1941.

From this award by the Industrial Board the appellant brings this appeal and the question presented by the record is whether or not the appellee was, at the time of the accident and injury, in fact an employee of the appellant.

The appellant contends that there is no evidence to establish the relationship of employer and employee between appellant and appellee, but insists that the services rendered by appellee were contractual and that appellee was an independent contractor.

In the instant case the rights, duties and obligations of the parties are set out in a written contract. It is the general rule that where such is the case the construction and meaning of the contract are questions of law and not questions of fact. *Mondamin, etc., Dairy Co.* v. *Brudi* (1904), 163 Ind. 642, 72 N. E. 643; *Robbins* v. *Spencer* (1890), 121 Ind. 594, 22 N. E. 660; *The Barbasol Co., Inc.* v. *Leggett* (1939), 106 Ind. App. 290, 19 N. E. (2d) 481.

It is true that to this rule there are exceptions, as has been held by this and other courts. The largest single category of cases falling within the exceptions are those concerned with the applicability of the doctrine that an employer is not liable to a third person for an injury caused by the collateral or casual torts of an independent contractor. In this class of cases the court is required to scrutinize the substance of the contract, and by the reception of parol evidence inquire into the actual conduct of the parties and all the attending circumstances in order to determine the actual relation which the alleged master sustained to the person employed. In these cases the question becomes one of fact rather than one of law.

*Estes* v. *Anderson Oil Co.* (1931), 93 Ind. App. 365, 176 N. E. 560; *The H. G. Olds Wagon Works* v. *Coombs et al.* (1890), 124 Ind. 62, 24 N. E. 589.

But here there is no involvement of the rights of a third person. The appellee is himself one of the contracting parties.

Appellee urges that the written contract was prepared by appellant and that this circumstance should weigh strongly against appellant's contention. This point, we believe, is not well taken. In construing a written contract, the language of which is not ambiguous, it is immaterial which party prepared the contract. *The Barbasol Co., Inc.* v. *Leggett, supra; Beck, etc., Co.* v. *Evansville Brewing Co.* (1900), 25 Ind. App. 662, 58 N. E. 859.

The language of the contract here is not ambiguous.

Appellee also presents three additional propositions as follows:

1. That under the contract appellant could have discharged appellee at any time and that this is a circumstance in establishing the relationship of employer and employee.

2. On March 11, 1941, appellee was working for appellant exclusively.

3. Under the contract appellee was to perform the work with his own hands and not by deputy.

We are of the opinion that these have no controlling force in affecting the contractual relationship of the parties.

Appellee, admittedly, was a partner in a firm furnishing contractual service to appellant and others. All remuneration paid by appellant for such service was paid to H. S. Mohler. Nothing was paid to appellee by appellant.

We can find no evidence to sustain the finding of the full Industrial Board that appellee was in the employ of appellant at the time of the injury here involved.

Award reversed.

NOTE.—Reported in 46 N. E. (2d) 259.