EVANSVILLE-VANDERBURGH SCHOOL CORPORATION *v.* EDWIN A. MOLL, JAMES E. DRAPER, ALLEN B. LASHLEY, RAYMOND HANCOCK, WILBERT A. RODE, WM. S. SPRINGER, VERNAL ROEDER, RAYMOND R. SHELTON, CLARENCE MARTIN, LILLIAN LUCILLE SHELTON, RICHARD BENGERT, CATHRYN L. RODE, RICHARD J. REISING, HAROLD I. ARNOLD, ROBERT E. DRAPER, RAYMOND W. CARIENS, AND W. A. JOHNSTON, INDIVIDUALLY AND AS REPRESENTATIVES OF THE CLASS OF SCHOOL BUS DRIVERS OF THE EVANSVILLE-VANDERBURGH SCHOOL CORPORATION.

[No. 476S94. Filed April 1, 1976.]

*Joe S. Hatfield,* of Evansville, for appellant.

*Gary L. Gerling, Ralph E. Moore,* of Evansville, for appellees.

DEBRULER, J.—This is a complaint filed by school bus drivers against the school corporation which employed them. The plaintiff-drivers seek to recover additional compensation to which they consider themselves entitled under the terms of their written contracts with the defendant-school corporation. They allege that the defendant failed to pay them for a sufficient number of days service. The trial court granted summary judgment for the plaintiffs, and the defendant appealed. The First District Court of Appeals agreed with the trial court and affirmed the judgment. 318 N.E.2d 391 (1974). The motion to dismiss the petition to transfer is denied. The petition to transfer is granted.

The plaintiffs filed a motion for summary judgment. The court correctly determined that there was no genuine issue of material fact which would require a trial and that the case was a proper one for summary disposition under Ind. R. Tr. P. 56. The trial court made special findings of fact and conclusions

of law. The relevant events and facts in this case are as follows:

In 1965, the Indiana Legislature enacted the School Transportation Code of 1965, Acts 1965, ch. 260. That Act governed the legal relationship between school bus drivers and school corporations in many respects, only a few of which are relevant here. It required school bus driver contracts to be in writing. Ind. Code § 20-9-1-5, Burns § 28-5105 (1970). Such contracts were to be negotiated after the completion of a process of publishing contract specifications and giving notice to the public for the taking of bids and were to be awarded upon consideration of bids or proposals. Ind. Code §§ 20-9-1-6, 20-9-1-7 and 20-9-1-8, Burns §§ 28-5106, 28-5107 and 28-5108 (1970). The form of the contract is to be prescribed by the State School Bus Committee and approved by the State Board of Accounts. Ind. Code § 20-9-3-2(f), Burns § 28-5129(f) (1970). Most relevant here, the Act established the formula to be used in fixing and determining the compensation of those bus drivers, who, like the plaintiffs, owned their own buses:

> "In the event a school bus driver for a public school corporation owns either the chassis or the body of a school bus, or owns both the chassis and the body of a school bus, the compensation of the driver shall be fixed and determined, by the terms of the school bus contract, on a per diem basis for the same number of days that determines the compensation of teachers in the schools to which such school bus driver transports school children." Ind. Code § 20-9-2-3, Burns § 28-5121 (1970).

This provision is hereafter referred to as "the statute."

In the 1971 session of the Indiana Legislature, an amendment to the School Transportation Code of 1965 was enacted, which superseded Burns § 28-5121, above, and changed the formula for determining the compensation of bus drivers of this same class. The new formula was set out in the following provision:

> "In the event a school bus driver for a public school corporation owns either the chassis or the body of a school bus, or owns both the chassis and the body of a school bus, the

compensation of the driver shall be fixed and determined, by the terms of the school bus contract, on a per diem basis for the number of days (a) on which the calendar of the school corporation provides that students are to be in attendance at school, (b) the driver is required by the school corporation to operate the bus on school related activities, and (c) days of in-service training which is either requested by statute or authorized by the school corporation including, but not limited to, the safety meeting workshops provided for in IC 1971, 20-9-2-5." Acts 1971, P.L. 324, § 1, p. 1302. [Ind. Code § 20-9-2-3, Burns § 28-5121 (1971 Supp.)]

This provision is hereafter referred to as "the amendment." The Governor approved this amendment on April 7, 1971, but, since it included no emergency clause, it did not become effective until promulgation, which occurred on September 2, 1971.

In August, 1971, the parties signed the bus contracts in issue. Paragraphs 8 and 10 of the contracts related to the formula to be applied in fixing and determining the plaintiffs' compensation:

"8. It is agreed that the provisions of Acts 1965, ch. 260, and as same may be amended, are hereby made a part of this contract, and that it is the intention of the parties hereto to enter into a binding contract subject to the School Transportation Code (Acts 1965, ch. 260), the provisions of which shall prevail over any part of this contract determined to be in conflict therewith."

"10. The School Corporation shall compensate the Driver as fixed and determined by the terms of this contract on a per diem basis for the number of days on which the Driver is required to operate the bus either in the transportation of children or in other duties assigned by the School Corporation or for days of in-service training which is either required by statute or authorized by the Board of School Trustees of the School Corporation.

The School Corporation shall pay the Driver the sum of *Fifty-five Dollars fifty Cents ($55.50)* per diem during school year *1971-1972*.

The School Corporation shall pay the Driver the sum of *Fifty-five Dollars fifty Cents ($55.50)* per diem during school year *1972-1973*.

> The School Corporation shall pay the Driver the sum of *Fifty-five Dollars fifty Cents ($55.50)* per diem during school year *1973-1974.*
>
> The School Corporation shall pay the Driver the sum of *Fifty-five Dollars fifty Cents ($55.50)* per diem during school year *1974-1975.*"[1]

Paragraph 8 was taken from the standard form approved by the State School Bus Committee and the State Board of Accounts. Paragraph 10 had not been so approved. The formula in paragraph 10 did not conform to the statute in effect on the days the contracts were executed. However, the formula did conform to the amendment passed by the Legislature and approved by the Governor on April 7, 1971.

Prior to the execution of the contracts and in accordance with the Code, the school had adopted and published contract specifications. Those specifications provided in relevant part:

> "All contracts between the Evansville-Vanderburgh School Corporation and school bus drivers shall contain all the provisions set forth in Chapter 260 of the Acts of 1965, as amended, or other statutory provisions.
>
> A school bus contract shall be bid on the basis of a proposal and negotiations, and may be let for a term of either two (2) years or four (4) years. A separate per diem rate shall be proposed for each one hundred eighty-two (182) day school year of the term. The per diem basis for pay shall be the number of days on which bus drivers are required to operate buses either in the transportation of children or in other duties assigned by the school or for days of in-service training which is either required by statute or authorized by the governing body of the Evansville-Vanderburgh School Corporation."

The specifications were the basis for the contracts executed by the parties and, like paragraph 10, conformed to the amendment, but not to the statute in effect at the time. The specifications expressly stated that the school corporation would pay compensation at the driver's own particular contract rate for 182 days service during each year of the time

---

1. The Fifty-five Dollars fifty Cents figure in this contract refers to the per diem compensation of plaintiff-driver, Edwin A. Moll, only. This figure varied in the contracts of the various drivers.

of the contract and that the basis for arriving at the figure of 182 days was the formula in the amendment.

This entire case is to be decided by determining which of two possible formulae is to be applied in calculating the compensation due the plaintiff-drivers. The plaintiffs contend that the alleged incorporative effect of paragraph 8 of the contract and § 28-5121 (1970), the provision of the School Transportation Code of 1965 in effect on the date the contracts were signed, is to require that the formula contained in § 28-5121 (1970) be applied. According to plaintiffs, application of this formula would result in the drivers being paid at the per diem rate in the contract, for the same number of days as the teachers were paid, that is, approximately 200 days, for each year of the contract. The defendant, on the other hand, contends that the formula to be applied is the one actually set out in paragraph 10 of the contract, and taken from the 1971 amendment to the School Transportation Code of 1965, even though the amendment did not supersede the formula in § 28-5121 (1970) until September 2, 1971 and, therefore, was not yet legally effective on the date the contracts were signed. Application of this formula would result in the drivers being paid for days on which they actually operated their school buses or attended training sessions, that is, for 182 days for each year of the contract.

The decision in this case is to be reached upon a resolution of two primary issues:

(1) Which of the two formulae did the parties include in their contracts; and

(2) Is there any legal impediment to the enforcement of the contracts as written.

I.

The trial court, agreeing with the plaintiffs' position, concluded that the operative formula was the one set forth in § 28-5121 (1970). This formula came into the contract by way of the reference in the first clause of paragraph 8 to: "the

provisions of Acts 1965, ch. 260, and as same may be amended," which were made a part of the contract; and the reference in the second clause of paragraph 8 to: "the School Transportation Code (Acts 1965, ch. 260)," the provisions of which were to prevail over actual contract provisions in conflict with it.

The first step in the chain of reasoning by which the trial court reached its conclusion was its determination that paragraph 8 is ambiguous. This determination permitted the court, as a matter of law, to invoke rules of contract construction, which gave paragraph 8 the meaning the court ascribed to it, namely, that the paragraph incorporated the formula of § 28-5121 (1970). With this determination of ambiguity, we do not agree. That is, we do not agree that the uncertainty of meaning in paragraph 8, which the trial court pointed out, has the legal effect of rendering the *contract* of the parties "ambiguous" as to which of the two possible formulae the parties meant in their contract to govern their relationship, and, therefore, subject to judicial construction by application of rules of construction.

In deciding cases involving disputes over the meaning of written contracts, courts resort to the application of rules of construction and the receipt of extrinsic evidence only after their careful study of the entire contract itself has failed to make clear its meaning.

> "In the absence of an ambiguity it is not within the function of the judiciary to look outside of the instrument to get at the intention of the parties. Their sole duty is to find out what was meant by the language of the instrument. In other words, the object to be attained in interpreting a contract is to ascertain the meaning and intent of the parties as expressed in the language used." *Jenkins* v. *King*, (1946) 224 Ind. 164, 171, 65 N.E.2d 121.

> "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties, as expressed in the language used, and to give effect to that intention, if it can be done consistent with legal principles." *Walb Construction Co.* v. *Chipman*, (1931) 202 Ind. 434, 441, 175 N.E. 132.

See also, *Sindlinger* v. *Dept. of Financial Institutions*, (1935) 210 Ind. 83, 199 N.E. 715; *Wayne Bank Bldg., Inc.* v. *Bank Bldg. & Equipment Corp. of America*, (1974) 160 Ind. App. 26, 309 N.E.2d 464. Part and parcel of this primary rule is the requirement of the law that courts must accept an interpretation of a contract which harmonizes the provisions of it. In the case of *Barbasol Co.* v. *Leggett*, (1939) 106 Ind. App. 290, 19 N.E.2d 481, the Appellate Court said:

> "A further well recognized rule of law requires a court to accept a construction of a contract which harmonizes the provisions thereof, if that can reasonably be done, as against a construction which causes the provisions thereof to be conflicting." 106 Ind. App at 296.

See also, *Irwin* v. *Kilburn*, (1885) 104 Ind. 113; *Equitable Surety Co.* v. *Taylor*, (1918) 71 Ind. App. 382, 121 N.E. 283. The meaning of a contract is ascertained from a consideration of all its provisions, not from a consideration of individual words, phrases or paragraphs read alone. *Allied Structural Steel Co.* v. *State*, (1970) 148 Ind. App. 283, 265 N.E.2d 49; *General Insurance Co. of America* v. *Hutchison*, (1968) 143 Ind. App. 250, 239 N.E.2d 596; *McClain's Estate* v. *McClain*, (1962) 133 Ind. App. 645, 183 N.E.2d 842.

In applying these interpretative rules to determine which of these two formulae the parties meant by their contract to use in fixing plaintiffs' compensation, we first examine the language of the contract itself. The contract in this case is made up of the body of the instrument and the specifications which are attached to it and made part of it by specific reference. *Oxford Development Corp.* v. *Rausauer Builders, Inc.*, (1973) 158 Ind. App. 622, 304 N.E.2d 211.

We have set out above paragraphs 8 and 10 and the relevant contract specification. Without examining the provisions of the statute referred to in paragraph 8, simply upon a facial examination of the contract instrument itself, the reader will determine beyond any doubt that the compensation due

the plaintiff Moll is $55.50 per day for each day spent driving in service of the school or attending a training session. The contract specification goes so far as to apply the formula expressed in paragraph 10 and to supply the actual resulting figure of 182 days. Absent the incorporative reference in paragraph 8, the true meaning of the contract would have been ascertained at this point and would be enforced by the court's simply granting judgment for the defendant.

Obviously, however, paragraph 8, with its statutory references, cannot be ignored in this first step of the judicial process of determining the meaning of the contract from its language. Upon consideration of the paragraph, we agree with the trial court's conclusion that there is a degree of uncertainty in paragraph 8. Again we look to the language employed. The first questionable aspect of paragraph 8 is whether there are two separate statutory referents or only one. The first referent is described as "the provisions of Acts 1965, ch. 260, and as same may be amended;" the second referent is described as "the School Transportation Code (Acts 1965, ch. 260)." Both references are to an entire statute. Both refer to Acts 1965, ch. 260. The provision of the first referent is made part of the contract; the second referent, by almost the same name, is declared to prevail over all parts of the contract conflicting with it. We conclude that the two descriptions, while differing slightly, can and must be harmonized to the extent that they identify but a single referent.

The second questionable aspect of paragraph 8 is the absence of a clear definition of this statutory referent. The trial court concluded that he could not determine from paragraph 8 whether or not the referent included amendments to Acts 1965, ch. 260, which, like the one from which the formula in paragraph 10 was taken, awaited only promulgation for full legal effectiveness. Of course, the trial court was not confined to paragraph 8 in making this decision. At this point, the law requires that the judicial investigation into

meaning spread to, but yet remained confined within, the four corners of the contract. If the single referent in paragraph 8 was limited to the statute and those amendments effective on the date the contracts were signed, then a conflict between paragraphs 8 and 10 would indeed be demonstrated. If the single referent in paragraph 8 was not limited to the statute and amendments in effect on the date of signing, but, instead, included the amendment at stake here, an interpretation which is clearly within the future cast given the definition of the referent by the clause, "as the same *may be amended,*" then paragraphs 8 and 10 and the specification would be brought into harmony. The law requires this Court to accept this latter interpretation, since that interpretation harmonizes the provisions of the contract. *Barbasol, supra.*

We, therefore, conclude that the parties in their contract meant for the compensation of the plaintiff-drivers to be fixed and determined by applying the formula outlined in paragraph 10 and the contract specification, as adopted from the amendment. The language of paragraph 10 is precise and clear in its meaning. So also is the language of the contract specification which includes an actual recitation of the number of days for which compensation might be expected. The language of paragraph 8 is uncertain in that it does not clearly define the statutory referent. However, it is susceptible of a reasonable interpretation in harmony with the language of paragraph 10 and the specification. Consequently, we are able to reasonably discern the meaning of the contract from its language.

## II.

The plaintiffs have also contended that, at the time they signed the contract, their right to receive compensation in accordance with the formula in the statute in effect on that date became vested. This contention is based upon the premise that the parties could not lawfully strike a bargain and set the terms of their contract in conformity with the amendment, since the amendment had not yet become fully effective. We now consider that argument.

The trial court concurred with the plaintiffs. The court based its conclusion upon application of the general principle that a contract, made with a view to statute or other law, must be read as though containing such statute or other law. *Dollman* v. *Pauley*, (1931) 202 Ind. 387, 174 N.E. 729. The United States Supreme Court formulation of this principle was expressed in *Von Hoffman* v. *Quincy*, (1866) 71 U.S. (4 Wall.) 535, 550, 18 L.Ed. 403:

> "It is also settled that the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms."

In the *Dollman* case and the similar cases relied upon by the plaintiffs, the courts were not faced with a contract in which the parties specifically meant to be bound by the provisions of a specific pending amendment. It is this part of the bargain between the parties to this contract, which sets this case apart from the cases relied upon by plaintiffs. The issue before us, namely, whether these parties might lawfully contract in contemplation of an amendment awaiting only final promulgation before becoming fully effective, has not been decided before in this State.

In the case of *Columbus, Piqua and Indiana Railroad Co.* v. *Indianapolis and Bellefontaine Railroad Co.*, (7th Cir. 1853) 5 McLean 450, Fed. Cas. No. 3,047, the parties, an Ohio and an Indiana railroad company, had made a contract to provide through freight connections by connecting their tracks at Union, Indiana. Later, they amended their contract to provide that the gauge on the entire road would be 4′ 8½″, although the Ohio gauge was fixed by statute at 4′ 10″ and other gauges were prohibited.

> "Under the above contract it became necessary for the Ohio Company to procure an act of the Ohio legislature, to legalize the gauge it had agreed to establish; and a law to that effect was obtained some four months after the contract was entered into." 5 McLean at 451.

At the time of this suit, the Indiana company wanted to change its gauge. Consequently, the Indiana company argued that the contract was illegal since the gauge was in violation of the Ohio statute. To this the court replied:

"I am not prepared to say that any party, who is called upon specifically to execute a contract may not set up the illegality of that contract, as being against an express statute. But the answer to the objection that although the contract was made, it was with reference to a future execution of its conditions, when the modification of the law of Ohio should be obtained, which removed the objection. And it in fact appears that the construction of the road, by laying down the rails, was not commenced until long after the passage of the amended act by the legislature of Ohio. The law, therefore, was not violated under the contract, nor was it intended to be violated." 5 McLean at 454.

In *Godfrey* v. *McArthur*, (1939) 186 Okla. 144, 96 P.2d 322, the plaintiff had agreed to assign to the defendant an oil and gas lease,

"for a consideration of $7,500 to be paid when the particular area should be zoned by city authorities for oil and gas development and permit to drill thereon issued, and the further consideration of $32,500 to be paid out of one-fourth of the oil as produced. McArthur agreed to use due diligence in having the land brought into a drilling zone and in obtaining a permit as aforesaid." 96 P.2d at 324.

After considering several other related issues, the court stated:

"We find no merit to the contention that the contract was illegal in its inception in that no ordinance existed permitting the drilling of a well on the premises in question. The contract specifically recognized the absence of such ordinance and was made in anticipation of a future one authorizing such drilling. The contract was not made for an evil purpose nor in violation of law. Such contracts are not of that illegal character which renders them unenforceable in the courts." 96 P.2d at 325-26.

In *Dodge* v. *Detroit Trust Co.*, (1942) 300 Mich. 575, 2 N.W.2d 509, the parties in a will contest made a settlement agreement two months before a relevant statute with regard to minor beneficiaries was to become effective. The agreement

was to bind all parties, but only if the minors consented to it. The parties "contemplated that its performance would not be completed until after the effective date of the act." 2 N.W.2d at 519.

At the time of this suit, the plaintiff claimed that the entire settlement was illegal. The court stated:

"The question before us is whether an agreement drawn up at a time when performance would, according to the claims of plaintiff, be unauthorized by law and contrary to public policy but the performance of which was intended by the parties to be deferred until the contemplated change by law in such policy, is valid or void. The well pleaded facts show that the settlement agreement was to go into effect after the effective date of the act and that it was so carried out. Such a contract is valid." 2 N.W.2d at 519-20.

In *Mouch* v. *Indiana Rolling Mill Co.*, (1926) 93 Ind. App. 540, 151 N.E. 137, the court noted in its opinion:

"If the parties may, by their conversation and private understanding, make and *include* as a part of their contract a *future statute,* why may they not also, by their private understanding and agreement, *exclude* from the operation of their contract an existing statute?" 93 Ind. App. at 544.

The court found that the parties to a contract which provided that each would pay a percentage of the taxes which the Government assessed for a certain year had not agreed to share additional taxes which were imposed by a statute passed subsequent to their contract.

In concluding, the court stated:

"In the case at bar, *it was competent* for the parties to contract with reference to future legislation on the part of Congress, but the law requires of them that, if they so contract, such intention shall be made to clearly appear from the contract itself, and cannot be left to inference or to proof *aliunde* the contract as written." (Emphasis added.) 93 Ind. App. at 546.

As these courts did, we also conclude that there is no reason of public policy to forbid parties to a contract from agreeing

to be bound by subsequent legislation and to perform their contract only after such legislation is in effect.

Nor do parties which must contract within strict statutory limitations contract illegally if they agree to perform according to a statute which will govern such performance at the time it is undertaken, instead of a statute which would govern their performance were it to begin at the moment the contract is signed.

In this instance, Ind. Code § 20-5-2-2(7) and (9), Burns § 28-1710(7) and (9) (1970), set out the general scope of a school corporation's authority to employ and contract with bus drivers for the transportation of school children. No statute required the corporation to contract only with regard to the law in existence at the time the contracts were signed. No statute forbade the corporation to contract to perform in a manner which would be recognized by statute at the time the performance was to begin. To contract in contemplation of a change in the law was not ultra vires the corporation.

Also, we can discern no public policy reason for prohibiting a municipal corporation from including such a contract term. In this case, the Legislature and the Governor had already determined that the new formula was fair and reasonable. Therefore, the defendant was not acting improvidently or contrary to the best interests of taxpayers or school children, when it made a contract providing for performance according to this formula. Because the parties specifically contracted to be bound by the provisions of the pending amendment and because their contract was not ultra vires, the only rights of the plaintiffs which became vested were those arising out of the execution of the contract itself and specified in it.

The plaintiffs argue, also, that to apply the amendment to a contract made before the effective date of the amendment was to apply it retrospectively. We agree that the Legislature's retrospective application of a statute to a contract made before the effective date of the statute can impair the obligation of contracts, contrary to Art. 1, § 10 of the United

States Constitution. Exceptions have been noted. *E.g.*, *Home Building and Loan Association* v. *Blaisdell*, (1934) 290 U.S. 398, 435-44, 54 S.Ct. 231, 78 L.Ed.2d 413; *El Paso* v. *Simmons*, (1965) 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446. However, in this case, the contract was written to conform to the amendment. The parties incorporated the new amendment into the terms of their contract prospectively. The underlying concern of Art. 1, § 10, forbidding impairment of contracts, is that a legislature or court will render invalid the rights and obligations which the parties agreed to in their contract. Clearly, that did not occur here.

The plaintiffs' final contention is that the school corporations must use the standard contracts prescribed by the State School Bus Committee and approved by the State Board of Accounts. They base this argument on Ind. Code § 20-9-3-2 (f), Burns § 28-5129 (f) (1970) which outlined the duties and powers of the State School Bus Committee. In relevant part, it read:

"The state school bus committee shall have the power and authority to perform the following functions:

\* \* \*

(f) Prescribe standard forms for school bus contracts, subject, however, to the approval of the state board of accounts."

Clearly, this statute mandated the Committee to prescribe standard contracts. The State sought uniformity in the contracts which the school corporations made with their respective bus drivers and provided legal advice in the form of approved standard contracts.

The Committee had no discretion to vary the formula for compensation. It had no choices to make in this regard. Thus, the absence of a Committee prescription for the formula for compensation did not take from the school corporations the contract right to agree to be bound by this prospective change in the law.

The judgment of the trial court is reversed, and the case is

remanded to the trial court with instructions to grant summary judgment for the defendant.

Givan, C.J., Arterburn, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 344 N.E.2d 831.