**MONTE CARLO, INC.,**
**Appellant-Defendant,**

v.

**Philip WILCOX, Appellee-Plaintiff.**

**No. 3–178A2.**

Court of Appeals of Indiana,
Third District.

May 30, 1979.

Franklin D. Shipman, Glickfield & Skager, Marion, for appellant-defendant.

Jack L. Walkey, Michael J. Stapleton, Ball, Eggleston, Bumbleburg & McBride, Lafayette, for appellee-plaintiff.

STATON, Judge.

Philip Wilcox filed suit against Monte Carlo, Inc. In Count I of his complaint, he sought specific performance of a land contract in which he was the buyer and Monte Carlo was the Seller. In Count II he sought punitive damages for Monte Carlo's breach of the contract. Count I was submitted to the court, which determined that Wilcox was entitled to specific performance. Count II was submitted to a jury, which awarded Wilcox punitive damages in the amount of $3700. Monte Carlo appeals both the trial court's determination and the assessment of punitive damages.

We affirm in part and reverse in part.

## I.

### Specific Performance

In November of 1974, Monte Carlo, as buyer, and LaVaughn and Gladys Crull, as sellers, entered into a long term contract for the sale of the real estate in question.

Pursuant to the terms of that contract, the Crulls were to pay the tax assessments for improvements to the ditches forming the drainage system for the land, and Monte Carlo was to pay the tax assessments for maintenance of the ditches.[1] In the spring of 1975, there was imposed upon the real estate a ditch improvement assessment of $2,057.58, payable in either a lump sum or in semi-annual payments of $205.76. The Crulls made two semi-annual payments to the county treasurer in 1975, leaving a balance of $1,646.06. On January 9, 1976, the Crulls paid the balance to the county treasurer. At no time did Monte Carlo pay anyone any money for the improvement assessments.

In September of 1975, Wilcox and Monte Carlo entered into their contract. The contract called for a purchase price of $67,000 with a down payment of $21,000. The balance was to be paid in annual installments of not less than $5,000 and Wilcox was given the option of accelerating his payments without penalty. Upon final payment, Monte Carlo was to deliver a deed for the property to Wilcox. The contract further provided that Wilcox "will be responsible for, and shall pay all ditch assessments." Prior to entering into the September, 1975 contract, Wilcox was aware of the provisions of the Monte Carlo-Crull contract concerning the payment of ditch assessments.

In January, 1976, Monte Carlo advised Wilcox that the November, 1975 improvement assessment had been paid and that Wilcox was required to "reimburse" Monte Carlo for that payment. As indicated above, the Crulls, not Monte Carlo, had made that payment. Wilcox made a payment of $205.76 to Monte Carlo and then, after discussing the matter with his attorney and concluding that he had not been obligated to make the payment, decided that he would obtain financing and pay off the balance of the purchase price so that he would no longer have to deal with Monte Carlo. Monte Carlo submitted a payoff figure of $43,308.20. When Wilcox tendered a

---

1. The annual maintenance assessments totaled $38.50.

check for that amount, however, Monte Carlo refused to deliver a deed. Instead, Monte Carlo claimed that Wilcox owed it the remainder of the improvement assessment ($1,646.06)—an assessment which had been paid in full by the Crulls, not by Monte Carlo. Wilcox then filed his complaint for specific performance.

■ The dispute centered on the meaning to be given the following provision of the Wilcox-Monte Carlo contract: "Purchaser will be responsible for and shall pay all ditch assessments." At trial, Monte Carlo argued that that provision imposed upon Wilcox an obligation to pay to Monte Carlo sums equalling the amount of the assessments, regardless of whether those assessments had been paid and regardless of who paid them. The trial court rejected that interpretation and so do we.

The above-quoted provision imposed an obligation on Wilcox to pay the amount of the assessments to the county treasurer, not to Monte Carlo. The Crulls' payment of the improvement assessments satisfied Wilcox's obligation concerning those assessments. Accordingly, the trial court properly ruled that Monte Carlo should have delivered the deed when Wilcox tendered his check in the amount of $43,308.20.

## II.

### Punitive Damages

■ Punitive damages are not compensatory in nature. Rather, they are designed to punish wrongdoers for conduct inimical to the general safety and well-being of the public and to deter others from similar conduct. *Capitol Dodge, Inc. v. Haley* (1972), 154 Ind.App. 1, 288 N.E.2d 766.

■ The general safety and well-being of the public is seldom affected by a breach of contract where the contracting parties are private individuals. In these contracts, the duty has been imposed by mutual consent of the parties. Hence, the general rule that punitive damages are not recoverable in an action for breach of contract. *Vernon Fire & Casualty Insurance Co. v. Sharp* (1976), 264 Ind. 599, 349 N.E.2d 173.

The general rule, however, is not without exceptions. In some instances, an independent tort may accompany the breach. In still others, because tortious conduct and conduct constituting breach of contract are not mutually exclusive, elements of tort may mingle with the breach. In either of the above situations, punitive damages are recoverable if it appears that the public interest will be served by the deterrent effect of the punitive damages. *Hibschman Pontiac, Inc. v. Batchelor* (1977), Ind., 362 N.E.2d 845.

■ Philip Wilcox and Monte Carlo, Inc. apparently possessed equal bargaining power when they reduced their agreement to a written contract for the purchase of land. Wilcox knew about the contract between Crull and Monte Carlo and the provisions in the contract which related to the payment of ditch assessments. Yet, Wilcox and Monte Carlo, Inc. mutually consented to the language in their contract which required a trial court to determine the intent of the parties and the meaning of the language used regarding the ditch assessment payments. An award of punitive damages here would only encourage careless draftsmanship and litigation in the courts. We fail to perceive any public interest affected by the imposition of punitive damages. *Cf. Jos. Schlitz Brewing v. Central Bev. Co., Inc.* (1977), Ind.App., 359 N.E.2d 566; *Jones v. Abriani* (1976), Ind.App., 350 N.E.2d 635. The trial court erred in allowing punitive damages.

The judgment of the trial court is affirmed to the extent that it compels Monte Carlo to specifically perform the contract. To the extent that it authorizes the imposition of punitive damages, however, the judgment is reversed and the matter remanded for proceedings consistent with this opinion.

GARRARD, P. J., and HOFFMAN, J., concur.