Fred C. TUCKER, Jr., John A. Wallace, Robert E. Houk, Edward J. Boleman, J. Kurt Mahrdt, Jr., George C. Charbonneau, James T. Schrage, Gary B. Warstler, John R. Jewett, Maurice C. Martindale, Hans T. French, Roy G. Altman, Herbert J. Backer, Don E. Ellis, General Partners, and Robert W. Wilds, Limited Partner, Individually, and d/b/a County Line 31 Company, an Indiana Limited Partnership, Appellants (Defendants Below)

v.

Raymond M. RICHEY, and Loretta L. Richey, Appellees (Plaintiffs Below).

No. 1-982A251.

Court of Appeals of Indiana, First District.

May 17, 1983.

Rehearing Denied June 21, 1983.

---

Kent Frandsen, Parr, Richey, Obremsky & Morton, Lebanon, Richard E. Aikman, Jr., Stephen J. Peters, Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, for appellants.

Milan D. Tesanovich, Portage, Michael J. Andreoli, Donaldson & Andreoli, Lebanon, Frederick B. Robinson, Indianapolis, for appellees.

ROBERTSON, Presiding Judge.

This appeal arises from a dispute concerning agreements to lease and sublease a certain site in the Greenwood Mall Shopping Center (Mall) in Marion County, Indiana. On May 5, 1982, the Boone Circuit Court granted partial summary judgment in favor of appellees Loretta and Raymond Richey (Richeys) and partial summary judgment in favor of appellants Fred C. Tucker, Jr., et al (Tucker).

We affirm.

On August 23, 1976, Tucker, as landlord and lessor, entered into a written lease which Indiana Ice Cream, as lessee, for the leased premises designated as the B–5 site in the Mall. Indiana Ice Cream sublet the B–5 location to a Bressler's 33 Ice Cream Shop franchise, as allowed under the terms of the lease between Tucker and Indiana Ice Cream. Also, in August of 1976, the Richeys entered into a franchise agreement with Jack's 33 Flavors, an affiliate organization of Indiana Ice Cream, whereby they agreed to operate a Bressler's 33 Flavor Ice Cream Shop in the Mall. On October 4, 1976, the Richeys opened their Bressler's 33 Flavor Ice Cream Shop at the B–5 location. In November of 1977, a kiosk occupied by the "Peanut Shack" was erected in the mall area of the shopping center adjacent to the Richeys' ice cream store. Additionally, a second kiosk was built to the east and north of the Peanut Shack and Richeys' ice cream shop. The Richeys made several complaints to Tucker regarding the existence and loca-

tion of the kiosks. After filing suit against Tucker, the Richeys vacated the premises in June of 1981. The following issues are presented for our review:

1. Whether the entry of partial summary judgment in favor of the Richeys finding a breach of expressed covenants in the lease agreements caused by the erection of permanent retail kiosks in the Mall is contrary to law.

2. Whether the denial of partial summary judgment in favor of the Richeys as to the issue of breach of the implied covenant of quiet enjoyment caused by the erection of permanent kiosks in the Mall is contrary to law.

3. Whether the entry of partial summary judgment in favor of Tucker, thereby the denial of partial summary judgment in favor of the Richeys, as to the issue of punitive or exemplary damages for the breach of covenants of the lease agreement caused by the erection of kiosks in the Mall is contrary to law.

 In regard to summary judgment, the standard of review applied by this court is the same as that of the lower courts; summary judgment pursuant to the Indiana Rules of Procedure, Trial Rule 56, is proper only when there is no genuine issue of material fact. *Enderle v. Sharman*, (1981) Ind.App., 422 N.E.2d 686. The burden is upon the moving party to establish that no material facts are in genuine issue and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Poxon v. General Motors Acceptance Corp.*, (1980) Ind.App., 407 N.E.2d 1181. The key terms "material" and "genuine" have been defined:

"A fact is material where its resolution is decisive of the action or a secondary issue." *Lee v. Weston*, (1980) Ind.App., 402 N.E.2d 23, 24.

"[A] factual issue is 'genuine' if it is not capable of being conclusively foreclosed by reference to undisputed facts." *Stuteville v. Downing*, (1979) Ind.App., 391 N.E.2d 629, 631.

 In applying these rules a judge may not weigh the evidence or resolve disputes as to different inferences that could be drawn from undisputed facts. *Carrell v. Ellingwood*, (1981) Ind.App., 423 N.E.2d 630, *transfer denied.*

Tucker contends that the decision of the trial court is erroneous because paragraphs (1) and (15) of the lease agreements expressly allow the landlord the right to build and maintain kiosks in the shopping center. Alternatively, Tucker maintains that even if the court deems the language of the lease to be ambiguous, material issues of fact exist as to the parties' intentions in regard to the presence of kiosks which should have precluded summary judgment.

The Richeys contend that no ambiguity exists as to the language of the lease. They also assert that Tucker was in direct violation of the lease by erecting and maintaining kiosks in that area reserved for the use and enjoyment of all tenants as well as the general public. Consequently, they maintain that they were entitled to judgment as a matter of law and that there was no error in the trial court's decision.

 The first question to be answered is whether Tucker violated the terms of the lease agreement by erecting and maintaining the kiosks. In deciding cases involving disputes over the meaning of written contracts, courts resort to the application of rules of construction and the receipt of extrinsic evidence only after their careful study of the entire contract itself has failed to make clear its meaning. *Evansville-Vanderburgh School Corp. v. Moll*, (1976) 264 Ind. 356, 344 N.E.2d 831. In the absence of ambiguity, it is not within the function of the judiciary to look outside the instrument to arrive at the parties' intent. *Ethyl Corp. v. Forcum-Lannom Assoc.*, (1982) Ind.App., 433 N.E.2d 1214. In other words, Indiana applies the so-called "four corners" rule in the construction of written instruments. This rule provides that in construing written instruments, the express language found within the four corners of the instrument, if unambiguous, determines the intent of the parties. Extrinsic evidence is

inadmissible unless there has been a showing of fraud, mistake, ambiguity, illegality, duress or undue influence. *Id.*

 A contract is ambiguous only where reasonable people could find its terms susceptible to more than one interpretation. *Marksill Specialties, Inc. v. Barger,* (1981) Ind.App., 428 N.E.2d 65. Furthermore, an ambiguity is not established by the mere fact the parties assert different interpretations of the contract. *Id.* Whether an ambiguity exists must be determined by the application of the following principles:

1) Words used in a contract must be given their common meaning unless, from the entire contract and its subject matter, it is clear that some other meaning was intended, and

2) Words, phrases, sentences and paragraphs of a contract are not to be read alone; the intention of the parties must be gathered from the entire contract.

*Ethyl Corp. v. Forcum-Lannom Assoc., supra* at 1218.

 Where ambiguity does exist, summary judgment is inappropriate. However, where the ambiguity arises not because of extrinsic facts, but by reason of the language used, construction of the contract is a question of law for the trial court. *Ancich v. Mobile Oil Corp.,* (1981) Ind.App., 422 N.E.2d 1320.

The provisions of the lease and sublease in question are paragraphs (1) and (15) which are undisputed and identical in both agreements. Paragraph (15) of the lease reads in part as follows:

Tenants shall not use the Mall Common Area or the Open Common Area for any display or storage of merchandise or use such areas in any way which would interfere with the use of such areas by other tenants, their employees and invitees, without the express written consent of Landlord and shall comply with all reasonable rules and regulations of Landlord with respect thereto. Landlord reserves the right to make charges [sic], additions, deletions, alterations, and improvements in and to such areas, and to permit advertising displays, entertainment, and educational displays and events, and kiosks thereon.

The crucial language of that provision is the sentence that reads, "Landlord reserves the right to make charges [sic], additions, deletions, alterations, and improvements in and to such areas, and to permit advertising displays, entertainment and educational displays and events and kiosks thereon." Tucker asserts that this sentence unequivocally and in no uncertain terms expressly reserves the right of the landlord to erect and maintain "kiosks" in the Mall. Indeed, this sentence, standing alone would, undoubtedly lead us to that conclusion. However, as stated previously, Indiana follows the "four corners" rule in the construction of written instruments. In applying this rule, we find that there was no error in the granting of summary judgment in favor of the Richeys.

 The provision for kiosks is contained at the end of the sentence providing for the construction and maintenance of advertising displays, entertainment, and educational displays and events, all of which are temporary in nature. Although the word "temporary" is not actually set forth, words are meant to be given such meaning as required in their context. Words should also be construed consistently with reference to the whole clause in which they are used. *See: Evansville-Vanderburgh School Corp. v. Moll, supra.*

The object to be attained in interpreting a contract is to find the intent of the parties as expressed in the language of the entire instrument. *Jenkins v. King,* (1945) 224 Ind. 164, 65 N.E.2d 121; *See also, Lippeatt v. Comet Coal & Clay Co., Inc.,* (1981) Ind.App., 419 N.E.2d 1332. Paragraph (1) of the lease agreement provides in part:

Landlord expressly reserves the right to change or modify the plans and facilities of the Shopping Center without the consent of the Tenant, but neither the Leased Premises nor the general character of the Shopping Center shall be changed without such consent.

Landlord grants to tenant, its invitees, customers, and general public, together with and subject to the rights granted, from time to time, by Landlord to other tenants of the Shopping Center, the right to use the Mall Common Area and the Open Common Area of the Shopping Center, as hereinafter defined.

Couple this language with the following provision of paragraph (15):

The Common Areas of the Shopping Center shall consist of the "Mall Common Area," being the enclosed common area as shown on the plot attached hereto as Exhibit A, with areas, corridors, fixtures and restrooms . . . .

and the trial court reasonably ascertained that the Mall Common Areas were intended to be open and available to all tenants, customers and invitees, thus, the erection of permanent kiosks would be prohibited.

Tucker additionally maintains that the kiosks are "facilities" as used in paragraph (1) of the lease, which reads as follows: "Landlord expressly reserves the right to change or modify the plans and facilities of the Shopping Center . . . ." This appears beyond its common usage. Considering this language in conjunction with that portion of paragraph (15) which states, "Tenants shall not use the Mall Common Area or the Open Common Area for any display or storage of merchandise or use such areas in any way which would interfere with the use of such areas by other tenants, their employees and invitees, without the express written consent of Landlord . . ." it appears that the parties intended that all tenants have equal access to the Common Mall Areas as well as use of the "facilities" referring to such things as heat, light, water, and air conditioning.

Paragraph (1) also states that the "general character" of the Shopping Center shall not be changed without the consent of the tenant. The "general character" of a shopping mall is where retail stores face out onto an enclosed walkway system, containing rest benches, water fountains and some aesthetic interior landscaping. Altering this "general character" of the Mall to make room for retail kiosks without the consent of the tenant would expressly violate the provisions of the lease.

■ Considering the instrument as a whole, the trial court's interpretation is entirely reasonable and proper. There is no error in the granting of summary judgment in favor of the Richeys finding a breach of the lease agreement.

■ The Richeys sought to recover for breach of an implied covenant of quiet enjoyment. The theory underlying this allegation is that by maintaining the kiosks, Tucker interferred with and prevented the Richeys from the full use and enjoyment of the leased premises. It is well settled in Indiana that in the absence of an express covenant for quiet enjoyment, the law will imply one. *Voss v. Capitol City Brewing Co.,* (1911) 48 Ind.App. 476, 96 N.E. 11; *See: Bowers v. Sells,* (1955) 125 Ind.App. 324, 123 N.E.2d 194.

In this case, however, there exists an express covenant of quiet enjoyment. Paragraph (7) of the lease agreement provides that:

Landlord covenants and agrees that if the Tenant shall perform all of the covenants and agreements herein stipulated to be performed on the Tenant's part, the Tenant shall, at all times during said Term, have the peaceable and quiet enjoyment and possession of said premises without any manner of hindrance from the Landlord or any person lawfully claiming through the Landlord.

■ The conduct giving rise to the breach of the covenant of quiet enjoyment is a result of Tucker's breach of the lease agreement as set forth in issue one of this case. The damages from such breach lies in an action against Tucker for erecting and maintaining kiosks in the common mall area. An indirect result of this breach may have affected the beneficial use and enjoyment of the leased premises. Indirect injury may be recovered as consequential dam-

ages.[1] Clearly, recovery based on an implied theory of quiet enjoyment would have been entirely inappropriate. We find no error by the trial court in this regard.

The Richeys also tried to recover an award of punitive damages against Tucker. Punitive damages are not compensatory in nature. Rather, they are designed to punish wrongdoers for conduct inimical to the general safety and well-being of the public and to deter others from similar conduct. *Monte Carlo, Inc. v. Wilcox,* (1979) Ind.App., 390 N.E.2d 673. Courts must be careful not to discourage honest litigation by allowing punitive damages against a party who is merely exercising his right to adjudicate a good-faith dispute, even if such party is found to be in error and even if his litigation injures the other party. *First Federal Sav. and Loan Ass'n. of Indianapolis v. Mudgett,* (1979) 397 N.E.2d 1002.

In this case, a dispute arose as to the interpretation of the language of the lease agreement. Although economic loss may have occurred to one of the parties, the injury is not one that would endanger the safety and well being of the general public. Consequently, we do not feel that an award of punitive damages is warranted. For the above reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

NEAL, J., concurs.

RATLIFF, J., dissents with opinion.

RATLIFF, Judge, dissenting.

I cannot agree with the construction placed upon the clear provisions of the leases in question by the majority opinion. I agree that the relevant provisions quoted in the majority opinion are clear and unambiguous. The majority's construction of those provisions is, to say the least, strained. In my opinion, the questioned provisions clearly reserve to the landlord the right to

change, alter, or modify the plans and facilities of the shopping center, so long as the general character of the center is unchanged, and to erect kiosks therein. The landlord having the right under the leases to erect kiosks, subject only to the limitation that the general character of the mall not be changed, the granting of summary judgment in favor of Richeys was error. There is no contention that the general character of the mall was changed by the kiosks, and, in fact, it was not. Anyone familiar with shopping malls is well aware that kiosks are not an unusual usage and are a common attribute of such malls. The landlord clearly and in unambiguous language reserved the right to install kiosks. There was no violation of the lease or of the express covenant of quiet enjoyment. The judgment of the trial court is wrong and should be reversed.

Therefore, I dissent.

---

1. *See Sigsbee v. Swathwood,* (1981) Ind.App., 419 N.E.2d 789 where the case was remanded to trial court for determination of damages due to failure of lessors to repair the leaking roof which was a breach of covenant to maintain

walls and roof. An indirect result of this breach affected the beneficial use and enjoyment of the property and injury therefrom was recovered as consequential damages.