Fred C. TUCKER, Jr., John A. Wallace, Robert E. Houk, Edward J. Boleman, J. Kurt Mahrdt, Jr., George C. Charbonneau, James T. Schrage, Gary B. Warstler, John R. Jewett, Maurice C. Martindale, Hans T. French, Roy G. Altman, Herbert J. Backer, Don E. Ellis, General Partners, and Robert W. Wilds, Limited Partner, Individually, and d/b/a County Line 31 Company, an Indiana Limited Partnership, Appellants,

v.

Raymond M. RICHEY and Loretta L. Richey, Appellees.

No. 384 S 94.

Supreme Court of Indiana.

March 21, 1984.

Richard E. Aikman, Jr., Stephen J. Peters, Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, Kent Frandsen, Parr, Richey, Obremsky & Morton, Lebanon, for appellants.

Milan D. Tesanovich, Portage, Michael Andreoli, Lebanon, Frederick Robinson, Indianapolis, for appellees.

James M. Barkley, Stephen R. Morris, Melvin Simon & Associates, Inc., Legal Dept., Indianapolis, for Melvin Simon & Associates, Inc. amicus curiae.

## PETITION TO TRANSFER

GIVAN, Chief Justice.

This cause comes before us on appellants' Petition to Transfer. We grant the Petition and thereby vacate the decision of the Court of Appeals reported at 448 N.E.2d 1206.

Raymond and Loretta Richey, appellees, became involved in a dispute concerning certain lease agreements between the Richeys, as tenants in the Greenwood Mall Shopping Center, and the landlord F.C. Tucker, Jr., et al. (Landlord), appellants. The Richeys ultimately filed suit against Landlord for breach of lease and sought punitive damages. The Boone Circuit Court granted partial summary judgment in favor of the Richeys and partial summary judgment in favor of Landlord. The Court of Appeals affirmed. *Tucker v. Richey*, (1983) Ind.App., 448 N.E.2d 1206.

On August 23, 1976, Landlord entered into a written lease agreement with lessee Indiana Ice Cream for premises designated as the B–5 site in the Greenwood Mall. Indiana Ice Cream is a real estate corporation for Indiana-Bressler's 33 Flavors Ice Cream shops. Pursuant to the terms of the lease, Indiana Ice Cream sublet the B–5 location to the Richeys so the Richeys could exercise their franchise agreement with Jack's 33 Flavors, an affiliate organization of Indiana Ice Cream, to operate a Bressler's 33 Flavors Ice Cream Shop in the mall.

Both the lease between Landlord and Indiana Ice Cream and the sublease executed by Indiana Ice Cream and the Richeys, contain identical provisions respecting Landlord's right to change or modify the plans and facilities of the shopping center, and specifically include the right to permit kiosks in the mall area.

The pertinent lease provisions are contained in paragraphs (1) and (15):

"(1) *Leased Premises.*

\* \* \* \* \* \*

"Landlord expressly reserves the right to change or modify the plans and facilities of the Shopping Center without the consent of the Tenant, but neither the leased premises nor the general character of the Shopping Center shall be changed without such consent.

"Landlord grants to Tenant, its invitees, customers and general public, together with and subject to the rights granted, from time to time, by Landlord to other tenants of the Shopping Center, the right to use the Mall Common Area and the Open Common Area of the Shopping Center, as hereinafter defined.

"The term 'Shopping Center' whenever used herein shall mean Greenwood Mall, including any and all structures, parking facilities, common facilities and the like on the property described in Exhibit B, as the same may from time to time be changed, together with the structures thereon which may from time to time be included by Landlord in the development or expansion of the Shopping Center.

\* \* \* \* \* \*

"(15) Common Area of Shopping Center —Costs. The common areas of the Shopping Center shall consist of the 'Mall Common Area,' being the enclosed common area as shown on the plot plan attached hereto as Exhibit A, with heated and air conditioned mall

areas, corridors, fixtures and restrooms, and the 'Open Common Area,' being the parking areas, sidewalks, ways of access, landscaped areas, and private roadways outside the buildings in the Shopping Center.

\* \* \* \* \* \*

"Tenant shall not use the Mall Common Area or the Open Common Area for any display or storage of merchandise or use such areas in any way that would interfere with the use of such areas by other tenants, their employees and invitees, without the express written consent of Landlord and shall comply with all reasonable rules and regulations of Landlord with respect thereto. Landlord reserves the right to make charges [sic], additions, deletions, alterations and improvements in and to such areas, and to permit advertising displays, entertainment and educational displays, and events, and kiosks thereon."

Mr. Richey understood the above terms to mean that the landlord had the right to construct temporary kiosks, such as entertainment and educational displays, although he testified, at his deposition, that no representations were made to him that Landlord would not permit permanent kiosks in the mall. The Richeys occupied the B-5 location and opened their Bressler's 33 Flavors Ice Cream Shop on October 4, 1976. In November, 1977, a permanent retail kiosk occupied by the "Peanut Shack" was erected near the Richeys' store in the Mall Common Area. A second kiosk was built to the east and north of the Peanut Shack and the Richeys' shop. The Richeys made several complaints to Landlord about the existence and location of the kiosks, and eventually vacated the B-5 location in June, 1981, after filing this action.

The trial court made no written findings of fact or conclusions of law. The grant of summary judgment was evidently based on a determination, as a matter of law, that (1) the lease language permitted only temporary advertising, entertainment, and educational kiosks; or, (2) the erection of permanent retail kiosks in the mall violated terms of the lease regarding changing the "general character" of the mall. The Court of Appeals affirmed the summary judgment below, finding the lease terms to be unambiguous and applying the "four corners" rule.

It is an oft repeated rule that courts will not rewrite parties' contracts. *Prudential Insurance Co. of America v. Lancaster*, (1966) 139 Ind.App. 292, 219 N.E.2d 607. The word "temporary" is not among the terms chosen by the parties in formulating their lease agreements. Although the lease is set out in a preprinted form, some provisions contained therein were stricken by the parties, and we assume that other terms could have been inserted, had that been the intent of the parties.

The word "kiosk" is defined in WEBSTER'S NEW WORLD DICTIONARY 777 (2d college ed. 1982) as follows:

"1. in Turkey and Persia, a summerhouse or pavilion of open construction 2. a somewhat similar small structure open at one or more sides, used as a newsstand, bandstand, entrance to a subway, etc."

One judicial definition of the term is found in *City and County of Honolulu v. Ambler*, (1981) 1 Hawaii App. 589, 590, 623 P.2d 92, 93 (as cited in 23A WORDS AND PHRASES, 1983 Supp., p. 43). Here "kiosk" is defined as a small structure used as a newsstand, entertainment booth or the like. In *Ambler* a gift shop was considered to be a kiosk. The dictionary and judicial definitions of a "kiosk" certainly contemplate a structure of a permanent or at least semipermanent nature used for retail sales, as opposed to the Court of Appeals' interpretation of a temporary advertising or entertainment display.

We find nothing in the quoted lease language to indicate the parties intended to limit Landlord's right to permit kiosks in the Mall Common Area to those of a temporary nature.

We disagree with the appellate court's interpretation of the lease provisions. We

find Judge Ratliff's construction to be more persuasive, and adopt his dissenting opinion:

> "I cannot agree with the construction placed upon the clear provisions of the leases in question by the majority opinion. I agree that the relevant provisions quoted in the majority opinion are clear and unambiguous. The majority's construction of those provisions is, to say the least, strained. In my opinion, the questioned provisions clearly reserve to the landlord the right to change, alter, or modify the plans and facilities of the shopping center, so long as the general character of the center is unchanged, and to erect kiosks therein. The landlord having the right under the leases to erect kiosks, subject only to the limitation that the general character of the mall not be changed, the granting of summary judgment in favor of Richeys was error. There is no contention that the general character of the mall was changed by the kiosks, and, in fact, it was not. Anyone familiar with shopping malls is well aware that kiosks are not an unusual usage and are a common attribute of such malls. The landlord clearly and in unambiguous language reserved the right to install kiosks. There was no violation of the lease or of the express covenant of quiet enjoyment. The judgment of the trial court is wrong and should be reversed." 448 N.E.2d at 1212.

Having determined Landlord expressly reserved the right to build kiosks in the Common Mall Area, we hold as a matter of law that the construction and maintenance of the Peanut Shack kiosk does not violate the lease nor the express covenant of quiet enjoyment. Needless to say, there being no entitlement to compensatory damages shown, there can be no punitive damage award.

We therefore vacate the Court of Appeals decision, and reverse and remand this cause for proceedings consistent with this opinion.

HUNTER, PRENTICE and PIVARNIK, JJ., concur.

DeBRULER, J., dissents with separate opinion.

DeBRULER, Justice, dissenting.

The written lease governs here, and pursuant to its terms the right was reserved in the landlord of the shopping center to "make changes, additions, deletions, alterations and improvements in and to such areas, and to permit advertising displays, entertainment and educational displays, and events, and kiosks thereon."

The key word in the provision is "permit". The landlord retained the right "to permit ... kiosks thereon." The synonym for it most favorable to the position of the landlord in this case would be "license". So understood the lease authorizes the landlord to license others to have "advertising displays, entertainment and educational displays, and events, and kiosks" within the mall common area. In essence it authorizes the landlord to license others to have "displays ... events, and kiosks" in the mall common area. The majority concludes that a kiosk is a small stand or booth of a semi-permanent nature. So understood, the lease simply authorizes the landlord to license others to use common mall area for "displays ... events" and small stands or booths of a semi-permanent nature.

Under the aegis of these lease provisions the landlord took exclusive possession of two parcels of the mall common area, and erected, or permitted the erection of, large permanent booths upon them, and received consideration from retailers in return for their exclusive occupancy. This constituted a lease and not a license. The creation of leasehold estates in discrete parcels within the mall common area resulted. Under the shopping center lease, the landlord reserved no right to grant and convey such estates in areas within the common mall. I agree with the trial court that there was a breach of the lease here, and would affirm the judgment.