INTERPOINT
CORPORATION, Plaintiff,

v.

TRUCK WORLD, INC.; Quadland Corporation; and Angola 69 Truck Plaza, Inc., Defendants.

Civ. No. F 86–326.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Oct. 17, 1986.

Leigh R. Gignilliat, III, Salinger, Gignilliat, Hymen & Zamparo, Chicago, Ill., Alan VerPlanck; Barrett & McNagny, Fort Wayne, Ind., for plaintiff.

Edward O. Delaney & James L. Flannery, Barnes & Thornberg, Fort Wayne, Ind., Edward Yasechko, New Middletown, Ohio, for Quadland.

J. Gary Burke, Hubbard, Ohio, for Truck World.

Ken Myers, Angola, Ind., for Angola 69.

## ORDER

**WILLIAM C. LEE, District Judge.**

This matter is before the court on plaintiff Interpoint Corporation's (Interpoint) motion for a preliminary injunction. On September 8, 1986, Interpoint filed suit against defendants seeking to enjoin defendants from interfering with Interpoint's alleged right to possess and operate a truck stop restaurant in Angola, Illinois. Interpoint received a temporary restraining order which was extended (without objection from defendants' counsel) on October 3, 1986, and which expired on October 10, 1986. A hearing on Interpoint's request for a preliminary injunction took place on September 19, 1986. Both sides submitted pre-hearing briefs. At the hearing, evidence and arguments were presented by both sides, which included testimony by Arthur Giddings, Vice President of Operations at Interpoint. A second hearing was held on October 14, 1986, when further arguments were presented. At the October 14, 1986 hearing, defendants' counsel agreed to a further extension of the temporary restraining order until October 17, 1986 at 3:00 p.m., which was ordered October 14, 1986. For the following reasons, plaintiff's motion for a preliminary injunction will be granted.

### I. Factual Background

While a more detailed statement of the facts as they relate to the requirements for granting a preliminary injunction will be given in Part II of this opinion, the general statement of facts that follows will set the background for further analysis. Interpoint's claim arises out of a lease, dated July 7, 1980. Angola Union 76 Auto/Truck Plaza (the Plaza), was leased to Interpoint by Truck World. Truck World, in turn, leased the property from the owner, Angola 69 (Prime Lease). Interpoint's lease was to expire on June 30, 1990.

Interpoint has operated the truck stop, pursuant to its lease, from 1980 to the present time. On July 17, 1986, Angola 69 sold its fee interest in the Plaza to Quadland. Thereafter, Truck World notified Interpoint that it had decided to surrender its Prime Lease with Angola 69. Paragraph 19 of the lease entered into between Truck World and Interpoint, dated July 7, 1980, is entitled "Termination of Lessor's Estate." This provision is crucial to arguments made by both sides and is as follows:

> Lessee [Interpoint] agrees that if Lessor [Truck World] is not the owner of the property herein leased, then this lease and the estate created hereby are subject to all of the terms and conditions of the lease or other arrangement under which Lessor is entitled to possession of the leased premises, and if for any reason whatsoever Lessor's tenancy is cancelled, terminated or surrendered, then this lease shall automatically terminate and end without further act of either of the parties hereto and without any liability on the part of the Lessor. Lessor shall use its best efforts to obtain the agreement of the owner of the Plaza, and the agreements of all senior Lessors that this lease shall continue in the event of the termination of any senior lease so long as Lessee pays the rent and faithfully observes all of the covenants and conditions imposed upon it by this lease.

Truck World argues that when it sold its interest to Quadland it automatically terminated its lease with Interpoint. Interpoint argues that Truck World failed to use its "best efforts" to convince Quadland to continue the lease with Interpoint. Interpoint argues that the obligation to use "best efforts" survived the sale from Truck World to Quadland because there is an identity of interest between Truck World and Quadland. Thus, Interpoint seeks injunctive relief to prevent defendants from interfering with its alleged right under the lease to operate the Plaza.

### II. Standards for Granting a Preliminary Injunction

The Seventh Circuit recently outlined the non-discretionary actions that a district judge must take when considering a motion for preliminary injunction. *Darryl v. Gregory Coler*, 801 F.2d 893, 898 (7th Cir. 1986).

1. He must evaluate the traditional factors enumerated in the case law: whether there is an adequate remedy at law, the danger of irreparable harm, some likelihood of success on the merits. *See Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386–88 (7th Cir.1984).

2. He must make factual determinations on the basis of a fair interpretation of the evidence before the court.

3. He must draw legal conclusions in accord with the principled application of the law. *Id.* at 898.

The court went on to state that "the district court must somehow balance the nature and degree of the plaintiff's injury, the likelihood of prevailing at trial, the possible injury to the defendant if the injunction is granted, and the wild card that is the public interest." *Id.*

In *Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1432–35 (7th Cir.1986), the Seventh Circuit reviewed two of its prior opinions on the law of preliminary injunctions. *See Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380 (7th Cir.1984) and *American Hospital Supply Corp. v. Hospital Products Limited*, 780 F.2d 589 (7th Cir.1986). The court in *Lawson*, noted that both *Roland* and *American Hospital* make it clear that while preliminary unjunctions are an equitable form of relief, they are an exercise of far-reaching power. *Lawson*, 782 F.2d at 1433. This court recognizes that preliminary injunctive relief invokes a far-reaching power:

> The idea underlying these equivalent approaches is that the task for the district judge in deciding whether to grant or deny a motion for preliminary injunction is to minimize errors: the error of denying an injunction to one who will in fact (though no one can know this for sure) go on to win the case on the merits, and the error of granting an injunction to one who will go on to lose. The judge must try to avoid the error that is more costly in the circumstances.

*Roland*, 749 F.2d at 388. *See also American Hospital*, at 593. Thus, this court must choose the course of action that will minimize the costs of being mistaken.

*Lawson, Roland,* and *American Hospital,* all adopted a "sliding scale" approach where the possibility of mistake would be minimized by weighing the costs of injunctive relief against the benefits. This principle was stated in mathematical terms, in *American Hospital,* at 593. The preliminary injunction should be granted if, but only if:

$$P \times Hp > (1 - P) \times Hd$$

The left hand of the equation is the magnitude of erroneously denying the injunction, arrived at by multiplying the probability that plaintiff will prevail at trial (P) by the harm to the plaintiff caused by the denial of the injunction (Hp). The right hand represents the magnitude of an erroneously granted injunction measured by multiplying the probability that the defendant will prevail at trial (1—P, the inverse of the plaintiff's probability of success) by the harm to the defendant caused by the granting of the motion (Hd). *Id.* at 593–94; *Lawson*, 782 F.2d at 1433–34. Obviously, this formula is not a substitute for, but an aid to, judgment. *Id.* at 1434. A figure representing the probability of success, for example, can only be arrived at through subjective estimate by the court. Nevertheless, the "sliding scale" approach is helpful and will be considered in determining whether or not plaintiff is entitled to a preliminary injunction.

It is well established in the Seventh Circuit that the plaintiff has the burden of proving each of the factors enumerated in *Coler*, above. *Palmer v. City of Chicago*, 755 F.2d 560, 576 (7th Cir.1985); *Godinez v. Lane*, 733 F.2d 1250, 1257 (7th Cir.1984); *Technical Pub Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136, 1138–39 (7th Cir.1984). A close examination of Interpoint's claims, reveals that Interpoint has carried its burden of proof.

## A. No Adequate Remedy at Law/Irreparable Harm

■ To prevail, Interpoint must prove that it has no adequate remedy at law or that it will suffer irreparable harm if the

injunction is denied. *On/TV v. Julien,* 763 F.2d 839 (7th Cir.1985); *Palmer v. City of Chicago,* 755 F.2d 560, 576 (7th Cir.1985). *See also Roland,* 749 F.2d at 386. In *Roland,* the court reasoned that an award of damages may be inadequate for a number of reasons. The damages may come too late to save the plaintiff's business, the plaintiff may not be able to finance his lawsuit, the defendant may become insolvent, or damages may be difficult to calculate. *Id.* at 386. Giddings is Interpoint's Vice President of Operations. He testified that Interpoint is the largest operator of truck stops in the country, with gross revenues of $5,000,000.00 per month. Of that $5,000,000.00, the Plaza has gross revenues of approximately $175,000.00 per month. The magnitude of Interpoint's income, and the relation of the Plaza's income to the whole, suggests that Interpoint will have no trouble financing its lawsuit. Nor is there any apparent danger that Interpoint will lose its other truck stop operations if it is forced to wait for an award of damages.

Truck World and Angola 69, however, may very well prove to be insolvent, making Interpoint's remedy at law inadequate.[1] While at first glance the possible insolvency of Truck World and Angola 69 may not seem relevant to Interpoint's remedy at law, upon careful scrutiny their insolvency may very well result in no recovery at all for Interpoint. This is a result of two considerations; an apparent distinction between the identity of Truck World and Quadland and a distinction in the theories of recovery pursued by Interpoint. Essentially, Interpoint argues that Truck World failed to use its "best efforts" to convince the new owner of the Plaza (Quadland) to continue the lease with Interpoint. Under this theory Quadland may not be liable at all. As Quadland points out, it is not a party to the 1980 lease between Interpoint and Truck World and is therefore not in privity with Interpoint. Moreover, Truck World's promise to use its "best efforts" to convince the new owner of the Plaza (Quadland) to accept the lease with Interpoint does not "touch and concern" the land, so that Quadland is not in privity of estate with Interpoint. *See Evansville & S.I. Traction Co. v. Evansville Belt Railroad,* 44 Ind. 1551, 87 N.E. 21 (1909); 49 Am. Jur.2d, *Landlord and Tenant* § 452. Thus, there is a possibility that the "best efforts" covenant can only be enforced against Truck World; it may not be enforceable against Quadland. Consequently, if Interpoint's only remedy is against Truck World, and if Truck World is insolvent, Interpoint has no remedy at all.[2]

There are a number of indications that Truck World may be insolvent. At oral argument, counsel for defendant Quadland conceded that if Truck World made no effort at all to convince Quadland to continue the lease, it would be liable in money damages. In spite of its damage exposure (of approximately $800,000–$950,000), Truck World has not entered an appearance or answered the plaintiff's complaint. An entry of default was made against Truck World and Angola 69 on October 9, 1986. This entry of default, in view of Truck World's exposure, suggests that it may prove to be insolvent. Beyond that, Interpoint's rent checks to Truck World were being endorsed to Quadland before Quad-

1. The court acknowledges the affidavit of Gary Burke, President and Secretary of Truck World, submitted by defendant. While the affidavit states that Truck World is the lessee of four tractor trailers owned by Angola 69, it does not alter this court's conclusion that Truck World may prove to be insolvent.

2. There is an obvious, but necessary and solveable tension between the plaintiff's burden of showing an inadequate remedy at law and the plaintiff's burden of showing a likelihood of success on the merits. Plaintiff's inadequate remedy at law results from the fact that Truck World may theoretically be liable and insolvent while Quadland may not be liable. To show a likelihood of success on the merits, however, plaintiff is arguing not only that Truck World is liable, but that (as Part B of this opinion shows) Quadland is liable. Obviously, if Quadland turns out to be liable then there can be no inadequate remedy at law, since Quadland does not appear to be insolvent. This tension is resolved by the fact that plaintiff's showing of a "more than negligible" (*see* Part B) likelihood of success is not inconsistent with the possibility that Quadland may ultimately not be liable, thus resulting in Interpoint's inadequate remedy at law.

land became the new owner of the Plaza, which further suggests that Truck World may not be solvent. Truck World's solvency is therefore questionable.

■ While plaintiff must show that an award of damages may be inadequate at the end of trial, it need not show that the award will be wholly ineffectual; just seriously deficient. *Roland*, 749 F.2d at 386. A defendant's potential insolvency, as mentioned earlier, satisfies the requirement of an inadequate remedy at law. *Id. See also Signode Corp. v. Weld-Loc Systems, Inc.*, 700 F.2d 1108, 1111 (7th Cir.1983). In this case, Interpoint may be left with no remedy at all if Quadland is ultimately found not liable. Damage relief is therefore not merely inadequate, it may prove ineffectual.

Defendant Quadland correctly points out that Interpoint's damages, should Quadland be liable, are calculable with the kind of precision with which damage awards are given by this and other courts. Giddings testified that the monthly profit generated from the restaurant is $9,000 to $10,000 and that the monthly profit generated from the garage is $5,000 to $6,000. From these figures, a liberal estimate of Interpoint's combined annual profit is $192,000.00. Giddings testified that the estimated profit in the current fiscal year would total $160,-000.00 to $190,000.00. These figures indicate that any damages suffered by Interpoint by reason of the termination of its lease could indeed be calculated based on past profits. However, the precision with which Interpoint's damages may be calculated will not be helpful to Interpoint if the only liable defendant is Truck World and if Truck World turns out to be insolvent. Interpoint has therefore shown that it has no adequate remedy at law.

Although some Seventh Circuit cases require the plaintiff to show no adequate remedy at law *or* irreparable harm, *see On/TV*, 763 F.2d at 839 and *Palmer*, 755 F.2d at 560, 576, others require the plaintiff to show no adequate remedy at law *and* irreparable harm. *See e.g., Coler*, at 898 and *Roland*, 749 F.2d at 386. In *Roland*, the court reasoned that the require-

ment of irreparable harm is needed to take care of cases where the plaintiff has no adequate remedy at law, but can wait until the end of trial (without irreparable harm) to get injunctive relief. *Id.* As already noted, Interpoint has no adequate remedy at law. Interpoint cannot wait until the end of trial to get injunctive relief. If it did wait, and only Truck World turned out to be liable, it would get no relief at all. Thus, Interpoint may suffer irreparable harm.

*B.   Likelihood of Success on the Merits*

■ Ultimately, Interpoint hopes to show that either its implied covenant of "quiet enjoyment," or its right to use "best efforts" was breached, entitling it to injunctive relief. Interpoint's burden is to show that its likelihood of success is more than negligible. *Roland*, 749 F.2d at 387. *See also* Comment, *Probability of Ultimate Success Held Unnecessary for Grant of Interlocutory Injunction*, 71 Colum.L.Rev. 165 (1971). As the following analysis will show, plaintiff has met that burden.

As noted earlier, Truck World's promise to use its "best efforts" does not "touch and concern" the land so that Quadland is not in privity with Interpoint with regard to that covenant. *Evansville*, 44 Ind. at 1551, 87 N.E.2d at 21. The other covenant that Interpoint seeks to enforce is the covenant of "quiet enjoyment" contained in Paragraph 8 of the 1980 lease. This covenant does run with the land and is implied as a matter of law in Indiana. *Nate v. Galloway*, 408 N.E.2d 1317 (Ind.App.1980); *Bowers v. Sells*, 125 Ind.App. 324, 123 N.E.2d 194 (1955). Quadland argues, however, that under Paragraph 19 of the 1980 lease, the covenant of "quiet enjoyment" ended upon Angola 69's sale of its interest to Quadland, which in turn caused Truck World to surrender its prime lease. Defendant further points out that if a landlord acts to disturb a tenant's quiet enjoyment, but does so by authorization of the lease, then no breach of the covenant has occurred. *Tucker v. Richey*, 460 N.E.2d 964, 965 (1984).

To overcome this problem and the problem of privity that exists with regard to the covenant to use "best efforts," Interpoint argues that there is an identity of interest between Truck World and Quadland, so that they should not be viewed as distinct legal entities. Indiana recognizes that in some cases (involving the theories of "mere instrumentality" or "alter ego"), to prevent fraud and injustice, it may be necessary "disregard the fiction of distinct corporate existence, and to hold as a matter of equity that such [a] separate entity does not exist." *Burgerman, Inc. v. Jordan Paper Products, Inc.*, 170 Ind.App. 295, 352 N.E.2d 821, 824 (1976); *Old Town Development Co. v. Langford*, 349 N.E.2d 744, 776 (Ind.App.1976). In its brief, Quadland acknowledged that some of its shareholders, directors and officers are related by blood or marriage to some of the shareholders, directors or officers of Truck World.

In argument during the hearing, plaintiff's counsel pointed out that Interpoint's rent checks to Truck World were being endorsed to Quadland before Quadland was the owner of the Plaza. Plaintiff's counsel also pointed out that Mr. Yasechko, who negotiated on Truck World's behalf with Giddings in the past, also sent Interpoint its notice to quit, as consultant for Quadland. Counsel further pointed out that the Tewell lease (Quadland's new tenant) was drafted after the sale to Quadland and recites that Interpoint's lease with Truck World is still in existence. All these facts indicate that Quadland may prove to be a "mere instrumentality" or "alter ego" of Truck World.[3]

While this court is fully aware that the existence of overlapping officers, directors, and shareholders does not necessarily lead to the conclusion that two corporations should be viewed as one legal entity, *Extra Energy Coal Co. v. Diamond Energy*, 467 N.E.2d 439, 441 (Ind.App.1984), by the evidence presented at the preliminary injunction hearing, the plaintiff has demonstrated more than a negligible likelihood of success in showing an identity of interest between Quadland and Truck World. Indiana courts disregard separate corporate entities to protect innocent third parties from fraud or injustice. *Kokomo Veterans, Inc. v. Schick*, 439 N.E.2d 639 (Ind.App.1982); *Clark Auto Co., Inc. v. Fyffe, Etc.*, 116 N.E.2d 532 (Ind.App.1954). This court, after reviewing the evidence, is convinced that plaintiff has more than a negligible likelihood of success, *Roland*, 749 F.2d at 387, and has a great deal to lose if this preliminary injunction is not granted.

### C. The Public Interest

The Seventh Circuit has frequently considered the effect of a preliminary injunction on "the public interest." *On/TV v. Julien*, 763 F.2d 839 (7th Cir.1985). In this case, the public interest factor is irrelevant. While it is undisputed that Interpoint is experienced and well qualified to manage the Plaza, there is nothing to suggest that Tewell's management would be any less desirable. The public simply will not know the difference.

### D. The Sliding Scale Formula

■ Under the "sliding scale formula," the possibility of mistake is minimized by weighing the costs of injunctive relief against the benefits. *American Hospital*, 780 F.2d at 593. In terms of the formula, even the slightest P (likelihood of plaintiff's success) $\times$ some Hp (harm to the plaintiff) would necessarily be greater than $(1 - P)$ (defendant's likelihood of success) $\times$ 0Hd (no harm to the defendant) for the reason that $(1 - P) \times$ 0Hp is zero. In this case, there can be no harm to the defendant Quadland if the preliminary injunction is granted. As previously mentioned in Part A of this opinion, while plaintiff's damages are calculable, they may only be recoverable against Truck World, who may prove insolvent. Hence, plaintiff's harm, if the preliminary injunction is not granted, is exceedingly great. On the other hand, if

**3.** The court has reviewed the affidavits of Ed Yacechko (relating to Quadland), Gary Perry (President and Treasurer of Angola 69), and Gary Burke (President of Truck World). Those affidavits do not alter the conclusion that Quadland may ultimately prove to be a "mere instrumentality" of Truck World.

the court mistakenly grants the injunction, and it turns out that Interpoint is entitled to no relief, there is no harm to Quadland because Quadland's damages are infinitely calculable and because Interpoint has posted a bond with the clerk of this court to cover those damages.

The evidence presented at the preliminary injunction hearing shows that Quadland's damages are calculable with precision. Quadland's new lease with Tewell Corporation provides Quadland with a percentage rate of 14.5% rather than 13%. As noted earlier, both Interpoint's gross revenue and Interpoint's annual profit, as well as the estimated profits for the remainder of 1986, are known. Thus, any damages incurred by erroneously granting Interpoint's motion for a preliminary injunction can be ascertained by simply awarding Quadland the difference of 1.5% in additional revenue. There is no dispute that Interpoint is a reputable and experienced operator capable of generating steady income.

This court realizes that the sliding scale formula was not intended as a substitute for judgment or an automatic way of reaching results. *Lawson*, 782 F.2d at 1434. Obviously, it is this court's subjective judgment that the plaintiff has a greater than negligible likelihood of success. Nevertheless, the formula is helpful in this case, while balancing the equities, in highlighting the fact that unlike Interpoint, Quadland has nothing to lose from a mistaken decision.[4]

4. This court is aware of an incongruity inherent in the granting of the preliminary injunction. The basis for finding no adequate remedy at law is that Quadland may not be liable (i.e., may not have identity of interest with Truck World and may not have any exposure in equity or at law), leaving only Truck World who may be insolvent. If Quadland is liable, Interpoint's damage remedy against Quadland may be adequate, making the preliminary injunction improper. If Quadland is not liable, then it is being enjoined so that Interpoint can recover from Truck World. The answer to this incongruity is the position that Interpoint will be in without the preliminary injunction; namely, the inequitable position of being exposed to the possibility of no recovery at all, after establishing a breach (by Truck World) of its covenant to use best efforts. In the balance of harms, this far outweighs any arguable harm to Quadland who

On October 10, 1986, Quadland petitioned this court for an increased cash bond. At the time the court entered the temporary restraining order, the bond was set at $10,000.00. In order to adequately protect Quadland's position, although it may be out of an abundance of caution, the bond is hereby increased to $20,000.00. Plaintiff is ordered to post the additional cash bond by 5:00 p.m. on October 24, 1986 with the clerk of this court, pursuant to Fed.R.Civ.P. 65(c).

### III. Conclusion

Interpoint has carried its burden of proof by showing that it has no adequate remedy at law and that it has more than a negligible likelihood of success on the merits. If the preliminary injunction were denied, and if Truck World turned out to be insolvent and there was no identity of interest between Truck World and Quadland, Interpoint would have no remedy at law even if it established that Truck World breached its duty to use best efforts. If Interpoint does not prevail on the merits, Quadland's damages are easily calculable and may be recovered out of the bond filed with the clerk of this court.[5]

Plaintiff's motion for a preliminary injunction, therefore, is hereby GRANTED. Plaintiff's cash bond is hereby INCREASED to Twenty Thousand Dollars ($20,000.00). Plaintiff is ORDERED to

has the benefit of the bond posted by Interpoint, and whose damages are easily calculable in the event that the preliminary injunction was incorrectly granted.

5. This is a case about risk; the "risk" to Interpoint if the preliminary injunction is denied and the concomitant "harm" to Quadland if the preliminary injunction is granted. At this early stage in the litigation the "balance of harms" tips strongly in favor of granting the preliminary injunction. *Coler,* at 898. The court is convinced, on the record before it, that in granting the injunction the court has avoided the potential error that is most costly in this case; the error that Interpoint may have no remedy at all should Truck World alone be liable for failing to use "best efforts." *See Roland,* 749 F.2d at 388.